No. 95-3619

United States of America,      *
                                   *
      Appellee,        *
                                   *  Appeal from the United States
    v.                   *  District Court for the
                                   *  Eastern District of Missouri.
Edward J. Hill, Jr.,        *
also known as Bud Hill,     *
                                   *
      Appellant.       *

_____

Submitted: April 9, 1996

Filed: July 31, 1996
_____

Before MAGILL, HENLEY, and LOKEN, Circuit Judges.

_____

MAGILL, Circuit Judge.


     Edward J. (Bud) Hill appeals his convictions for possession with intent to distribute 100 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); conspiracy to possess with intent to distribute 100 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Hill raises a number of issues on appeal, most significantly that the district court[1] erred in failing to suppress evidence, including a quantity of methamphetamine and two handguns, seized from a truck which Hill was driving. We affirm.

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

**I.**

On April 24, 1994, Ripley County, Missouri, Sheriff Dennis Cox began receiving information regarding Thomas E. Parham, Jr., a local resident, from a confidential informant who was close to Parham and his family. The informant told the sheriff that Parham was dealing drugs to teenagers in Doniphan, Missouri. The informant explained that Parham was currently in California with his family, that he was bringing methamphetamine back to Missouri by the 27th or 28th of April, and that he carried a 9 mm handgun in the console of his truck. The sheriff confirmed that Parham and his family were out of town, and that Parham was in California.

On April 29, 1994, Sheriff Cox contacted the informant to learn why Parham had not yet returned to Ripley County, but the informant only knew that Parham was still in California. When the sheriff again contacted the informant, on May 4, 1994, the informant told him that Parham was back in Missouri and was selling drugs out of his truck. The sheriff confirmed that Parham had returned to the area.

Later that same day at approximately 10 p.m., the informant contacted the sheriff and told him that, within a few minutes, Parham would be arriving in Doniphan, Missouri. Parham, with a man from California, would be coming to Doniphan from the east on 160 Highway in a blue, dual-cab Chevrolet, dual-wheel truck with "Tom's Tires" written on the side. The informant told the sheriff that he had seen drugs and a gun in the console of the truck that evening.

Based on this information, shortly after 10 p.m. on May 4, 1994, police stopped a blue, dual-cab Chevrolet, dual-wheel truck with "Tom's Tires" written on the side which had arrived at Doniphan by heading east on 160 Highway. Parham and appellant Hill were in the vehicle when it was stopped. Parham explained that Hill was from California, and he consented to a search of the

vehicle. Parham refused to allow a drug dog to enter the truck, and he would not open the locked center console of the truck, claiming that the key had been lost. The sheriff, who had arrived at the scene, impounded the truck, pending application for a search warrant. The truck was towed to a garage. Parham and Hill were not formally placed under arrest at this time, and they were taken to Parham's home by officers.

On May 5, 1994, Sheriff Cox submitted an application for a search warrant for the truck and a supporting affidavit. The affidavit described the confidential informant, and stated that

> [i]nformation from this informant is that informant has seen crank (methamphetamine) in the center console of [Parham's] Chevrolet dual wheel truck on numerous occasions and has also seen a semi-automatic hand gun in the console with the drugs. This informant is deemed reliable based on information received from informant in the past.

I Appellant's App. at 135-36. The affidavit then detailed information that the informant had supplied to the sheriff regarding Parham which the sheriff had confirmed. Later that day, the Honorable James R. Hall, Circuit Court Judge for Ripley County, Missouri, issued a search warrant allowing a search of Parham's truck and the seizure of methamphetamine and firearms.

Upon searching the center console of Parham's truck, the police found 219.9 grams of methamphetamine, a 9 mm handgun, a .22 caliber handgun, ammunition for both weapons, and an appointment book. Parham was arrested on May 13, 1994, and Hill was arrested on September 21, 1994. Parham and Hill moved to suppress evidence seized from Parham's truck, which was denied by the district court

following a hearing before a magistrate judge.[2]  Immediately prior to trial, Parham changed his not guilty plea pursuant to a plea bargain, and he agreed to assist prosecutors in their case against Hill.  Hill pled not guilty, and was convicted by a jury on all counts of a three-count indictment.  Hill was sentenced to an aggregate term of 181 months imprisonment.

On appeal, Hill argues that his Fourth Amendment rights were violated when he and Parham were stopped and the truck was seized on May 4, 1994, and that the district court erred in not suppressing evidence obtained as a result of that stop.  Hill also argues that the search warrant issued on May 5, 1994, for Parham's truck was based on an improper application.  In addition, Hill argues that the district court improperly allowed at trial hearsay testimony and character evidence, that the district court committed plain error in allowing an alternate juror to deliberate with the jury panel for the first two and one-half hours of jury deliberations, and that his trial attorney was ineffective.

**II.**

**A.**

Law enforcement officials "may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot."  <u>United States v. Johnson</u>, 64 F.3d 1120, 1124 (8th Cir. 1995) (quotations and citation omitted), <u>cert. denied</u>, 116 S. Ct. 971 (1996).  Hill contends that the police should not have relied on the confidential informant's information, and therefore the police lacked an articulable reasonable suspicion of criminal

---

[2]The district court adopted the report and recommendation of the Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri.

-4-

activity when they stopped Hill and Parham on May 4, 1994.  We review de novo the district court's conclusion that a reasonable articulable suspicion existed.  See id.

A finding of reasonable suspicion "is based on the totality of the circumstances."  Id. (citing United States v. Cortez, 449 U.S. 411, 417 (1981)).  "Reasonable suspicion may be based on an informant's tip as long as it is sufficiently reliable."  United States v. Quarles, 955 F.2d 498, 501 (8th Cir.) (quotations and citations omitted), cert. denied, 504 U.S. 944 (1992).

In light of all of the circumstances of this case, we conclude that the information provided by the confidential informant to Sheriff Cox was reliable, and was sufficient to generate a reasonable articulable suspicion to justify an investigative stop.  The confidential informant's information was based on direct observations of Parham, entitling "his tip to greater weight than might otherwise be the case."  Illinois v. Gates, 462 U.S. 213, 234 (1983).  In addition, Sheriff Cox independently corroborated much of the informant's tips, which "reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting" the tips.  Id. at 244-45 (citations and quotations omitted).  The informant correctly predicted much of Parham's future conduct, with the sole exception of the exact date of his return to Missouri.  "If the informant had access to accurate information of this type," id. at 245, we "conclude that it was not unlikely that he also had access to reliable information of [Parham and Hill's] alleged illegal activities."  Id.[3]

---

[3]In Alabama v. White, 496 U.S. 325, 332 (1990), the Supreme Court, faced with a virtually identical situation, concluded:

> Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.  When significant aspects of the [informant's] predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the [investigative] stop.

Hill contends that he was placed under de facto arrest on the evening of May 4, 1994, and that, because he had not been properly Mirandized, incriminating statements he made should have been suppressed, and any evidence ultimately stemming from those statements should have been suppressed under the fruit of the poisonous tree doctrine. "A person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994) (quotations and citations omitted), cert. denied, 115 S. Ct. 1970 (1995). We review a claim of de facto arrest de novo. See id.

A "de facto arrest occurs when the officers' conduct is more intrusive than necessary for an investigative stop." Id. at 916-17 (quotations and citation omitted). We must consider such factors as the duration of a stop, whether the suspect was handcuffed or confined in a police car, whether the suspect was transported or isolated, and "the degree of fear and humiliation that the police conduct engenders." Id. at 917 (quotations and citations omitted). In this case, Parham was not handcuffed, nor isolated, nor taken to a police holding facility. The stop lasted no longer than was necessary for the police to search Parham's vehicle and, when the center console proved inaccessible, to impound it. While there were five police cars at the scene, no officers brandished weapons, or otherwise attempted to intimidate Hill. While Hill was transported in a squad car, the transportation was to Parham's residence, and was necessary in light of the impoundment of Parham's truck. In these circumstances, we reject Hill's

contention that he was under de facto arrest on the evening of May 4, 1994.

## C.

Hill further argues that the police lacked probable cause to seize Parham's truck without a warrant, and that evidence subsequently obtained from the truck should have been suppressed at trial. We review de novo the district court's conclusion that probable cause existed to allow a warrantless seizure of Parham's truck. See <u>Ornelas v. United States</u>, 116 S. Ct. 1657, 1663 (1996).

Law enforcement officials may seize a vehicle without a warrant if there is probable cause to believe that contraband is hidden within. <u>See</u> <u>Chambers v. Moroni</u>, 399 U.S. 42, 51 (1970). Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." <u>Ornelas</u>, 116 S. Ct. at 1661. In this case, it is clear that probable cause existed. Upon stopping Parham and Hill in a valid investigatory stop, law enforcement officials confirmed that Parham was traveling with a man from California, further corroborating the informant's information. Although given consent to search, the police could not access the center console of the truck, which was the only part of the vehicle the police believed contained contraband. Given the demonstrated reliability of the informant and the natural suspicions created by the locked console, we conclude that Sheriff Cox had probable cause to believe that Parham's truck contained contraband.

## D.

Finally, Hill contends that his Fourth Amendment rights were violated because Sheriff Cox's affidavit in support of the application for the search warrant for Parham's truck was

conclusory and contained misleading statements.  We disagree.  We review Sheriff Cox's affidavit in support of the search warrant application "in a common-sense and realistic fashion, and deference is to be accorded an issuing magistrate's determination of probable cause," United States v. Doty, 714 F.2d 761, 763 (8th Cir. 1983), recognizing that such

> [a]ffidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation.  Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.

Id. at 763-64 (quotations and citations omitted).

Sheriff Cox's affidavit adequately reported the information that he had obtained from the confidential informant, and his own corroboration of details of that information.  While Sheriff Cox's statement that "[t]his informant is deemed reliable based on information received from informant in the past," I Appellant's App. at 136, could have been misleading, in the context of the affidavit we believe that it was sufficiently clear that the sheriff was referring to information received in the past pertaining to this case.  We conclude that there was no error in the issuance of the search warrant based on Sheriff Cox's application and affidavit.[4]

---

[4]Hill also complains that the warrant as issued inadequately described the items to be seized, because it referred only to "methamphet[a]mines and a firearm," I Appellant's App. at 133, although methamphetamines, two firearms, ammunition, and a appointment book were seized.  We find this contention to be meritless.  The warrant was sufficiently clear to limit the scope of the search to specific contraband and evidence of crimes, which included the additional handgun.  The ammunition and notebook, although not described in the warrant, were seizable when discovered during the course of the search.  See United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir.) (police searching pursuant to a valid warrant may seize evidence of a crime in plain view), cert. denied, 502 U.S. 896 (1991).

## III.

Hill next argues that the district court made several evidentiary errors, by allowing improper examination and cross-examination by the prosecution. "We review a district court's evidentiary rulings under the abuse of discretion standard." United States v. Jackson, 67 F.3d 1359, 1366 (8th Cir. 1995), cert. denied, 116 S. Ct. 1684 (1996).

Prosecution witness Laura Mae Richmond testified that Parham had confided to her on May 20, 1994, that he and Hill had carried methamphetamine in the center console of Parham's truck. Hill argues that this was inadmissible hearsay. We disagree. Parham had testified at trial that he and Hill had transported methamphetamine, and Hill sought to discredit Parham's testimony by cross-examining him as to his plea bargain with the government. Federal Rule of Evidence 801(d)(1)(b) "permits, for purposes of rebutting a charge of recent fabrication or improper influence or motive, testimony regarding the prior consistent statements of a declarant who testifies at the trial and is subject to cross-examination concerning the statements." United States v. Barrett, 937 F.2d 1346, 1349 (8th Cir.), cert. denied, 502 U.S. 916 (1991).

Hill argues that, because the prior consistent statement was made by Parham to Richmond a week after he had been arrested, he had a motive to lie about Hill's involvement. Parham did not enter into his plea agreement until June 1995, however, and Hill has not pointed to anything in the record suggesting that Parham had discussed a plea agreement with the government as of May 20, 1994, nor that Hill had even considered such an agreement. The trial court did not abuse its discretion in allowing Richmond to recount a prior consistent statement by Parham which rebutted the implication of fabrication created by Hill's cross-examination. See Tome v. United States, 115 S. Ct. 696, 701 (1995) ("A consistent statement that predates the motive is a square rebuttal

of the charge that the testimony was contrived as a consequence of that motive.").

Larry Daly, a defense witness, testified that Hill had loaned him substantial amounts of money for "prescription medication, food, rent." II Trial Tr. at 206.  When asked by Hill if the loans had "anything to do with selling you drugs?", id., Daly said "No."  Id.  On cross-examination the prosecution, over Hill's objections, asked Daly about his history of illegal drug use.  Hill contends that this was character evidence, and was improper under Federal Rule of Evidence 608(b).  We disagree.  Hill "opened the door" to the prosecution's cross-examination regarding Daly's drug abuse by asking Daly if Hill's loans were for drugs, and the cross-examination was proper to impeach Daly's testimony.  See United States v. Escobar, 50 F.3d 1414, 1423-24 (8th Cir. 1995) (where witness testified that his motive for traveling was to visit his brother, it was proper to elicit on cross-examination that brother was in prison and witness was not on approved visitor list).

## IV.

The district court inadvertently allowed an alternate juror to deliberate with the jury panel during the first two and one-half hours of jury deliberations.  Upon discovering that the alternate was with the jury panel, the district court, after notifying the parties, removed the alternate and allowed the jury to continue deliberating.  Although Hill made no objection to the district court's handling of the situation, he now complains that the district court committed plain error, and that he should have been granted a new trial sua sponte.

Plain error occurs if (1) there is an error, (2) the error is obvious, and (3) the error affects a defendant's substantial rights.  See United States v. Ryan, 41 F.3d 361, 367 (8th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1793 (1995).  Allowing an

-10-

alternate juror to deliberate with the jury panel is an obvious error.  <u>See</u> <u>United States v. Olano</u>, 507 U.S. 725, 737 (1993).  We may not, however, presume that the alternate's presence prejudiced the defendant, <u>id.</u> at 740, and Hill has made no affirmative showing that he was prejudiced by the district court's error.  In these circumstances, the district court did not err in not ordering a new trial sua sponte.

Finally, Hill makes a bare allegation that his trial counsel was ineffective.  Hill's "claim of ineffective assistance of counsel is premature.  Claims of ineffective assistance of counsel normally are raised for the first time in collateral proceedings under 28 U.S.C. § 2255 . . . because normally such a claim cannot be advanced without the development of facts outside the original record."  <u>United States v. Lewin</u>, 900 F.2d 145, 149 (8th Cir. 1990) (quotations and citation omitted).  We therefore decline to consider this claim.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.