_____

No. 96-2624SI
_____

United States of America,        *
                                 *
            Appellee,            *
                                 *    Appeal from the United States
    v.                           *    District Court for the Southern
                                 *    District of Iowa.
Juanita Lynn Dandridge,          *
                                 *        [UNPUBLISHED]
            Appellant.           *
_____

Submitted:  November 19, 1996

Filed:  November 27, 1996
_____

Before FAGG and HANSEN, Circuit Judges, and MAGNUSON,* District
    Judge.
_____

PER CURIAM.


    At 8:00 a.m. on November 15, 1995, Des Moines police received a tip
from a reliable informant that a black woman carrying drugs would be
arriving on a bus from Detroit in forty-five minutes.  The bus from Detroit
arrived at 8:45 a.m., and the only black woman who got off the bus was
Juanita Lynn Dandridge.  One of the policeman approached Dandridge and
asked for consent to search her luggage.  Dandridge agreed, but no drugs
were found.  Dandridge then agreed to be searched by a female officer, so
a female officer was summoned.  Dandridge asked to use the bathroom and to
go inside the bus terminal because she was cold.  Dandridge and the
officers went inside, but the officers told Dandridge to wait for the
female officer to perform a pat down search for drugs before Dandridge

---

    *The Honorable Paul A. Magnuson, Chief Judge, United States
District Court for the District of Minnesota, sitting by
designation.

used the restroom.  At 8:57 a.m., an officer called to check on the female officer's status, and was told the female officer would arrive in about four minutes.  Before the female officer's arrival at 9:05 a.m., however, Dandridge admitted she possessed drugs and pulled a bag containing an off-white, rock-like substance from her pants.

The district court denied Dandridge's motion to suppress the drugs, and Dandridge pleaded guilty to possessing more than fifty grams of cocaine base.  After taking evidence at the sentencing hearing, the district court found the Government had proven by a preponderance of evidence that the seized substance was cocaine base as defined in U.S. Sentencing Guidelines Manual § 2D1.1 note (N) (1995) ("crack"), and thus assigned Dandridge the base offense level in § 2D1.1(4).

Dandridge appeals the denial of her motion to suppress, asserting the officers exceeded the permissible scope of an investigatory stop. According to Dandridge, her detention while waiting for the female officer was a de facto arrest.  We review a claim of de facto arrest de novo.  See United States v. Hill, 91 F.3d 1064, 1070 (8th Cir. 1996).

To decide whether a detention is reasonable in the context of an investigative stop, we consider both the length of the detention and police efforts to conduct the investigation quickly and unintrusively.  See United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994), cert. denied, 115 S. Ct. 1970 (1995).  An investigatory stop must be temporary and must last no longer than necessary to effectuate the stop's purpose.  See id.  In addition, officers must use the least intrusive means reasonably available to verify or dispel suspicion quickly.  See id.

To distinguish between an investigative stop and a de facto arrest, we consider whether the stop involved delay unnecessary to

the officers' legitimate investigation and whether the officers' conduct engendered fear and humiliation. See id. at 916-17. Here, there was no unnecessary delay or police intimidation of Dandridge. The officers acted diligently to minimize the detention period by calling for the female officer promptly and by checking on the status of the female officer a few minutes later. Twenty minutes was not an unreasonable period to wait for the female officer's arrival to check Dandridge for drugs. Dandridge was not handcuffed, isolated, interrogated, or taken to a police holding facility. Under these circumstances, we agree with the district court that the detention was reasonable. See id. at 917. Because Dandridge voluntarily produced the evidence during a legal detention, the district court properly refused to suppress the evidence.

Dandridge also appeals her sentence, arguing the Government failed to show the seized drug substance was crack cocaine. See United States v. James, 78 F.3d 851, 855 (3d Cir.), cert. denied, 117 S. Ct. 128 (1996). We disagree. At the sentencing hearing, the Government introduced a laboratory report indicating Dandridge had possessed ninety-nine grams of cocaine base. A criminalist testified that the substance's chemical composition indicated it was crack, and a drug agent from the Federal Bureau of Investigation testified that he believed the substance was crack based on his extensive experience. There is no clear error in the district court's finding that the seized substance was crack cocaine.

We affirm the denial of Dandridge's motion to suppress, and her sentence under the guidelines provisions for crack cocaine.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.