# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2845

_____

United States of America

*Plaintiff - Appellee*

v.

Manuel Maldonado Aguilar

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 17, 2014
Filed: February 26, 2014

_____

Before GRUENDER, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Manuel Maldonado Aguilar (Maldonado) appeals his conviction for conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. Having jurisdiction under 28 U.S.C. § 1291, this court remands.

## I.

In August 2011, Arkansas police found meth inside the spare tire of Julio Rapan's Jeep Laredo. Rapan cooperated with law enforcement in a controlled delivery to Little Rock. There, Rapan met his contact in a Walgreens parking lot. (Maldonado drove the contact but remained in his car.) The contact entered the Jeep. Maldonado followed it to a restaurant. Rapan exited the Jeep, and the contact drove it to Maldonado's house. Maldonado followed.

Upon arrival, police arrested Maldonado and conducted a protective sweep of his house. He then signed a consent-to-search form. The search revealed $45,965 in cash, a .22-caliber revolver, scales with meth residue, and tools stuck between a tire and a rim.

Maldonado moved to exclude evidence from the search and to suppress statements to law enforcement. The district court denied the motion. A jury found Maldonado guilty. The district court sentenced him within-the-guidelines to 235 months' imprisonment. Maldonado appeals, contesting the search of his home, the sufficiency of the evidence, and the presence of an alternate juror during deliberations.

## II.

Reviewing the denial of a motion to suppress, this court views factual findings for clear error and legal conclusions de novo. *United States v. Anderson*, 688 F.3d 339, 343 (8th Cir. 2012). This court "will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is

clear a mistake was made." ***United States v. Vanover***, 630 F.3d 1108, 1114 (8th Cir. 2011).

## A.

Maldonado attacks the protective sweep as unreasonable and overbroad. He claims his entire home did not immediately adjoin the place of arrest (the front lawn), and the government presented no articulable facts suggesting the house harbored danger. *See **United States v. Davis***, 471 F.3d 938, 944 (8th Cir. 2006) ("A 'protective sweep' must be 'a quick and limited search of premises . . . conducted to protect the safety of police officers or others.'"), *quoting **Maryland v. Buie***, 494 U.S. 325, 327 (1990).

Without a warrant, probable cause, or reasonable suspicion, officers may "look in closets and other spaces immediately adjoining the place of arrest" to ensure officer safety. ***Buie***, 494 U.S. at 334. Beyond that, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." ***Id.***

Law enforcement did not find evidence during the protective sweep. More importantly, Maldonado did not contest the protective sweep in his motion to suppress. This argument is waived. ***United States v. Green***, 691 F.3d 960, 965 (8th Cir. 2012) ("[T]he mere filing of a motion is not sufficient to avoid waiver of specific arguments that are advanced for the first time on appeal. The Rule 12 waiver provision applies not only to the failure to make a pretrial motion, but also to the failure to include a particular argument in the motion.") (internal quotation marks omitted).

B.

Maldonado challeges the warrantless search following the protective sweep, claiming his consent was not "freely and voluntar[ily] given." He alleges: English is not his first language, he has limited education, he was in custody, not advised of his right to refuse, not read his *Miranda* rights, and agents threatened to deport his family. He also argues that he acquiesced, but did not consent, because he believed officers would continue searching even without his permission.

"The government bears the burden to prove by a preponderance of the evidence that consent to search was freely given." *United States v. Arciniega*, 569 F.3d 394, 398 (8th Cir. 2009). "Whether an individual's consent is voluntary is a question of fact that must be determined from the totality of the circumstances," *id.*, including "characteristics of the accused and details of the interrogation." *United States v. Luna*, 368 F.3d 876, 878 (8th Cir. 2004). "[W]hether or not the suspect has actually consented to a search, the Fourth Amendment requires only that the police reasonably believe the search to be consensual." *United States v. Garcia*, 197 F.3d 1223, 1227 (8th Cir. 1999). *See United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001) ("The precise question is not whether Jones consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented.").

Unrestrained, sitting at his kitchen table, Maldonado signed a consent-to-search form (in Spanish, his native language). During the search, he did not object or seek to withdraw consent. There is no objective evidence that he was threatened or coerced. *See Arciniega*, 569 F.3d at 398-99 (listing factors to determine voluntariness, stating that a *Miranda* warning and awareness of the right to refuse are not required for voluntary consent). As the district court ruled, even if Maldonado acquiesced because he thought the search was inevitable, the key is whether the police reasonably believed he consented. *See Garcia*, 197 F.3d at 1227. The district court did not err in denying the motion to suppress. *See Arciniega*, 569 F.3d at 398

-4-

(finding valid consent where the defendant was not impaired, threatened, or coerced; signed a Spanish consent form; and raised no objection during the search).

## III.

Maldonado attacks the sufficiency of the evidence for his conspiracy conviction. He also asserts that the government argued a lower standard of a proof than "beyond a reasonable doubt" by asking the jury to consider what a reasonable person would do.

This court reviews "challenges to the sufficiency of the evidence de novo, viewing the facts in the light most favorable to the verdict, resolving any evidentiary conflicts in favor of the prosecution, and accepting all reasonable inferences that support the verdict." *United States v. Osuna-Zepeda*, 416 F.3d 838, 841-42 (8th Cir. 2005). This court upholds a verdict if it finds that a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* at 842.

To prove conspiracy, the government must show: (1) there was a conspiracy; (2) Maldonado knew of the conspiracy; and (3) he intentionally joined it. *United States v. Rolon-Ramos*, 502 F.3d 750, 754 (8th Cir. 2007). "The conspiracy's existence may be proved by direct or circumstantial evidence." *Id.*, citing *United States v. Cain*, 487 F.3d 1108, 1111 (8th Cir. 2007).

The evidence was: (1) police found meth in the spare tire of Rapan's Jeep; (2) they saw scratch marks on the tire rim; (3) Rapan cooperated, transporting the meth to Little Rock; (4) Rapan arranged to meet his contact at Walgreens; (5) the contact arrived with Maldonado; (6) the contact entered Rapan's Jeep and drove him to a restaurant; (7) Maldonado followed; (8) Rapan exited the Jeep, and the contact drove it to Maldonado's house; (9) Maldonado followed an almost identical route to his house; (10) Maldonado exited his car; (11) law enforcement arrested him; (12) they

searched his house, revealing a set of digital scales with meth residue, $45,965 in cash, a .22 revolver, and tools sticking out from between a tire and a rim.

Based on this evidence, a reasonable jury could find Maldonado guilty beyond a reasonable doubt. His assertion that the government argued a lower standard of proof is baseless.

IV.

The parties—and the district court—agree that the alternate's presence during jury deliberations violated Federal Rule of Criminal Procedure 24(c)(3): "The court may retain alternate jurors after the jury retires to deliberate. The court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." *See* ***United States v. Olano***, 507 U.S. 725, 737 (1993) (the "presence of alternate jurors during jury deliberations is no doubt a deviation from Rule 24(c)").

Maldonado did not object at trial. No one noticed the error until the government filed a "Notice of Error in Proceedings" the day after the verdict. This court reviews for plain error. **Fed. R. Crim. P. 52** ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). Maldonado bears the burden to show that the error was prejudicial. ***Olano***, 507 U.S. at 737-38 ("The presence of alternate jurors during jury deliberations is not the kind of error that 'affects substantial rights' independent of its prejudicial impact. . . . [I]f no harm resulted from this intrusion [of an alternate juror into the jury room] reversal would be pointless."). The government maintains Maldonado fails to show prejudice.

In *Olano*, the Supreme Court addressed Rule 24(c) violations, framing the "ultimate inquiry" on prejudice: "Did the intrusion affect the jury's deliberations and thereby its verdict?" The Court said:

> In theory, the presence of alternate jurors during jury deliberations might prejudice a defendant in two different ways: either because the alternates *actually participated* in the deliberations, verbally or through "body language"; *or* because the alternates' presence *exerted a "chilling" effect* on the regular jurors. Conversely, "if the alternate in fact abided by the court's instructions to remain orally silent and not to otherwise indicate his views or attitude . . . and if the presence of the alternate did not operate as a restraint upon the regular jurors' freedom of expression and action, we see little substantive difference between the presence of [the alternate] and the presence in the juryroom of an unexamined book which had not been admitted into evidence."

*Id.* at 739 (emphasis added), *quoting **United States v. Allison***, 481 F.2d 468, 472 (5th Cir. 1973).

Interpreting *Olano*, three circuits have held that a defendant is prejudiced by an alternate's actual participation in deliberations. *See **Manning v. Huffman***, 269 F.3d 720, 726 (6th Cir. 2001) ("[E]vidence that an alternate juror participated in jury deliberations is sufficient to demonstrate prejudice."); ***United States v. Acevedo***, 141 F.3d 1421, 1424 (11th Cir. 1998) ("The Supreme Court has held that the mere presence of an alternate in the jury room during deliberations is not inherently prejudicial to the defendant. The Court, however, implied that once the alternate participates in any way—whether through words or gestures—prejudice is manifest.") (internal citations omitted);[1] ***United States v. Ottersburg***, 76 F.3d 137, 140 (7th Cir.

---

[1] It should be noted that *Acevedo* held that prejudice from the alternate's participation can be eliminated when an alternate is removed and the jury is properly instructed. *Acevedo*, 141 F.3d at 1426-27.

1996) ("*Olano* indicates that the substantive participation of alternates, once established, is sufficient to establish prejudice."). This court similarly holds that a defendant is prejudiced when an alternate "actually participate[s] in the deliberations" or "exert[s] a 'chilling' effect on the regular jurors." **Olano**, 507 U.S. at 739. *See also* **Allison**, 481 F.2d at 472 ("[S]ufficient prejudice and effect on the jury's verdict would be shown and, therefore, a new trial required if the alternate disobeyed the court's instructions and *in any way participated in the jury deliberations*, or if any regular juror was deterred in the free exercise of his independence of thought, expression, or action by the mere presence of a non-participating alternate during deliberations.") (emphasis added).

The Eighth Circuit addressed Rule 24(c) violations in *United States v. Hill*, which the government argues controls here. **Hill**, 91 F.3d 1064 (8th Cir. 1996). In *Hill*, the district court inadvertently allowed an alternate to deliberate for two-and-a-half hours. *Id.* at 1071. Before the verdict, the court removed the alternate and allowed the jury to continue deliberating. This court held:

> Allowing an alternate to deliberate with the jury panel is an obvious error. We may not, however, presume that the alternate's presence prejudiced the defendant, and Hill has made no affirmative showing that he was prejudiced by the district court's error. In these circumstances, the district court did not err in not ordering a new trial sua sponte.

*Id.* at 1072 (internal citations omitted).

*Hill* is distinguishable. In *Hill*, there was no evidence of actual participation. This court—describing the alternate's role with the word "deliberate," not "participate"—held that Hill failed to make an affirmative showing beyond mere presence. **Hill**, 91 F.3d at 1072 (may not presume that the alternate's presence prejudiced defendant). Here, Maldonado's counsel reported contacting two jurors (with the court's permission), who said that the alternate actually participated in

deliberations by asking and answering questions, but did not vote. The government and the district court repeated these assertions. Unlike Hill, Maldonado makes a showing beyond mere presence.

In light of this difference, Maldonado could meet his burden of proving prejudice. The district court and the parties appear to believe Maldonado's assertion about the alternate's participation, but the court did not hold a hearing or make findings of fact.

This court remands for factual findings about the alternate's actual participation. *See* **Fed. R. Evid. 606(b)** ("During an Inquiry Into the Validity of a Verdict or Indictment . . . [a] juror may testify about whether . . . an outside influence was improperly brought to bear on any juror."); ***United States v. Tucker***, 137 F.3d 1016, 1030 (8th Cir. 1998) ("[I]f a party shows that outside contact with the jury presents a reasonable possibility of prejudice to the verdict, he is entitled to a hearing on the matter."), *citing* ***Remmer v. United States***, 347 U.S. 227, 230 (1954); ***United States v. Watson***, 669 F.2d 1374, 1391, 1391 n.17 (11th Cir. 1982) ("The alternate's presence in the jury room after the jury retired to deliberate was undeniably an intrusion into the sanctity of the jury. . . . The only way to determine whether the alternate in fact participated or affected the verdict is through conducting the evidentiary hearing prescribed by *Allison*. . . . We recognize that the hearing itself represents an intrusion into the privacy of the jury. Under circumstances such as this we believe a hearing limited to a determination of whether the alternate's presence could have affected the verdict is justified."); ***Allison***, 481 F.2d at 472 (remanding for an evidentiary hearing to determine "whether the alternate participated in any way in the deliberations; whether he took part in any votes of the jury; whether he indicated his views regarding any of the defendants in any way—orally or otherwise; and whether the mere presence of the alternate restrained any of the regular jurors in expressing his views or in exercising his independence of thought and action"). *See also* ***Olano***, 507 U.S. at 738 (discussing alternate participation in the context of

"outside intrusions" but declining to decide whether testimony about juror participation violates Rule 606(b) or whether courts of appeal have authority to remand for *Remmer*-like hearings on plain-error review); ***United States v. Cuthel***, 903 F.2d 1381, 1383 (11th Cir. 1990) (noting that "it is impossible for the alternate to have been an 'outsider' until the deliberations started").

*******

This case is remanded for the limited purpose of inquiry about the alternate's actual participation.  This court retains jurisdiction during this limited remand.

—————————————————