**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Carlton Ellis ALLISON et al., Defendants-Appellants.**

**No. 72-2828.**

United States Court of Appeals,
Fifth Circuit.

July 13, 1973.

Arthur J. Hanes, Sr., Birmingham, Ala., for Allison and Perry.

J. Terry Huffstutler, Jr., Guntersville, Ala., for Holladay.

Robert B. French, Jr., Fort Payne, Ala., for Ralph Marquez.

James R. Venable, Atlanta, Ga., for Bryant and Robinson.

Larry L. Debus, Phoenix, Ariz., for Michael Marquez.

Wayman G. Sherrer, U. S. Atty., Albert C. Bowen, Jr., Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

DYER, Circuit Judge:

The defendants were tried and convicted of substantive violations of the Dyer Act, 18 U.S.C.A. §§ 2312 & 2313, and of conspiracy in violation of 18 U. S.C.A. § 371. The only issue on appeal deserving in depth consideration is whether a new trial is required because the district court allowed an alternate juror, who had been carefully instructed not to participate in any way in the jury's deliberations, to accompany the twelve regular members of the jury to the juryroom and to remain with them during the first portion of their deliberations until the court could ascertain whether one member of the jury who had been ill the previous night was well enough to continue throughout the jury's entire deliberations. We remand for an evidentiary hearing to determine if there is a reasonable possibility that the presence of the alternate juror during the jury's deliberations affected the jury's verdict.

On August 3, 1972, after the conclusion of evidence and argument of counsel in this three-week trial, the court recessed until 9:00 A.M. on August 4. Upon reconvening it was brought to the court's attention that one of the regular jurors, Finch, had been ill the night before and that his ability to continue was uncertain. Counsel for the defendants and the United States Attorney were called into chambers and informed of the situation. The court explained the alternatives:

> I can excuse him [the alternate] and hold him away from everybody and away from the jury just in case we need him. And I think this is maybe the best procedure. I can instruct him and the jury that he is going to sit in the juryroom just in case he is needed. But that he is not to in any way participate in any of the deliberations. That he is to have nothing to say. Just sit there. Or I can get a stipulation out of all the lawyers that they will agree to proceed or allow the jury to proceed with their deliberations so long as eleven jurors remain in the juryroom.

The United States Attorney then suggested that the court excuse Finch and

replace him with the alternate, Henry. But the trial judge discarded this suggestion because he did not believe that Finch's "illness right at this time is such that it would justify me substituting the alternate for him."

All of the defendants' attorneys agreed that the best procedure would be to allow the alternate to accompany the jury to the juryroom. No one saw any harm in this procedure since the jury had not been sequestered and since Henry had been with the jury during the entire three-week trial. Indeed, the defense counsel emphasized that they preferred this solution. Additionally, the procedure to be followed was carefully explained a second time by the trial judge in open court in the presence of all of the defendants and their attorneys. The jury and Henry were instructed that Henry was "not to participate in any way. You are not to make any suggestion or you are not to help them in any way. Just be there in case we need you. . . . And, of course, you realize that you would not participate in any vote or do anything other than just be available." The jury retired and after 1½ hours of deliberations took a break for lunch. After lunch it became apparent that Finch was feeling somewhat better and was "going to make it," whereupon the alternate juror was immediately discharged. The jury then returned to the juryroom and deliberated another 3 hours before rendering a verdict of guilty.

Never, throughout all of the proceedings in chambers, in open court, and after the verdict was rendered, did any of the defendants or their attorneys voice the slightest objection to the jury procedure. The issue was raised for the first time on appeal. Before this Court the defendants now contend that the district court's allowing the alternate juror to retire to the juryroom and remain there with the twelve regular jurors during part of the deliberations violated their Sixth Amendment right to a trial by a jury of twelve. We disagree.

The defendants do not question that the procedure to be followed was fully explained to them and to the jury in open court, nor do they deny the fact that their attorneys expressly consented and stipulated to, even indicated a preference for, the procedure adopted by the district court. Rather they contend that the stipulation entered into on their behalf by their counsel did not constitute a waiver of their Sixth Amendment rights because they did not *personally* assent to the procedure. Furthermore, they argue that even if their silence during and after the court's explanation of the procedure coupled with the affirmative approval of their attorneys in chambers would in other circumstances constitute a waiver, they were powerless under the Sixth Amendment's mandate to agree to a jury of more than twelve—*i. e.*, that a jury in excess of twelve, even if expressly approved by the defendants, their attorneys, the prosecution and the court, is *per se* unconstitutional. We need not and do not pass upon the defendants' constitutional arguments. In our view, the defendants were not tried by a jury of thirteen, but rather by a jury composed of twelve members with an alternate *observing* a portion of the deliberations. The district court expressly instructed the alternate and the jury that the alternate was not to help the jury in any way, not to make any suggestions, not to participate in any vote, and not to do anything except be available in case he was needed. In no sense did Henry have standing as a member of the jury. Indeed, he was discharged after 1½ hours of deliberation and a full 3 hours before the jury rendered its verdict. This analysis of the jury procedure also renders moot the defendants' argument that reversal is required because the mandatory twelve-member jury provision of Fed.R.Crim.P. 23(b) was violated.

The critical issue before us is whether the failure of the district court, in violation of Fed.R.Crim.P. 24(c), to discharge the alternate juror before the jury retired for deliberations and the

presence of the alternate during the first one-quarter of the jury's deliberations constitute plain error requiring reversal and a new trial. Admitting that their counsel expressly consented to the alternate observing the jury deliberations and conceding that counsel had every opportunity to object to this procedure both in chambers and in open court when the procedure was explained to the defendants and to the jury, the defendants nevertheless contend that any departure from Rule 24(c) automatically requires a new trial. We not only are of the view that such an automatic rule is an improper standard to apply to the situation here at issue, but also find the authority, upon which the defendants so heavily rely, for this proposition—United States v. Beasley, 10 Cir. 1972, 464 F.2d 468, and United States v. Virginia Erection Corp., 4 Cir. 1964, 335 F.2d 868—to be factually distinguishable from the case *sub judice.*

In *Virginia Erection,* a new trial was necessitated by a combination of procedural irregularities which are not present in the instant case. First of all the alternate was instructed "to say nothing unless one of the regular jurors should become ill or 'disqualified.'" 335 F.2d at 870. The Fourth Circuit reasoned that the district court by this instruction had apparently delegated to the alternate and to the ill juror the strictly judicial functions of "determining disqualification of a regular juror and ordering replacement by an alternate." *Id.* at 871–872. Additionally, when it came to the attention of the trial judge that one of the jurors might be unduly prejudiced, he called the juror into his chambers and, "in the presence of all counsel, the court reporter, a deputy marshal and a notary public," *id.* at 872, extensively interrogated her. After reviewing these proceedings, the Fourth Circuit concluded that "[t]here exists the grave danger that the interrogation of Miss Furr may have operated as a restraint upon her freedom to function as a juror." *Id.* at 873.

Unlike the present case, no one in United States v. Beasley consented to the alternate accompanying the jury during deliberations. After the trial to the jury had been concluded and the jury instructed, the court simply failed to discharge the alternate. Without the parties' or the court's knowledge, the alternate went along with the jury as it retired for deliberations, "participated in the vote to elect a foreman, and voted to go to lunch." 464 F.2d at 469. After the trial judge realized that the alternate had not been discharged, the court was reconvened and the attorneys were advised of what had happened. Immediately, the defense counsel moved for a mistrial. "The court then held a brief hearing to determine the extent the alternate had participated. At the conclusion of this hearing the motion for mistrial was denied." *Id.* The Tenth Circuit reversed, holding that "[o]nce the prescribed number of jurors becomes 'the jury,' then, and immediately, any other persons are strangers to its proceedings. Their presence destroys the sanctity of the jury and a mistrial is necessary." *Id.* at 470.

While we might agree that under the circumstances of *Beasley* and of *Virginia Erection* a mistrial was necessary, we are not persuaded that the alternate's presence during deliberations in the limited circumstances of the present case automatically requires the granting of a new trial. In *Beasley* counsel had not stipulated to the procedure and the alternate had not been instructed *not to participate* in any way. On the contrary, the alternate did participate in electing the foreman and counsel made a timely motion for a mistrial. In *Virginia Erection,* the alternate had not been instructed not to say anything or to do anything other than "just be there in case *we* need you." Instead, the court's instruction apparently gave the alternate and ill juror the authority to decide when the alternate was needed. Furthermore, regardless of the presence of the alternate during jury deliberations,

the new trial was, in the circumstances of that case, required by the trial court's interrogation of one of the jurors.

■ The provision of Rule 24(c) that an alternate juror who does not replace a regular juror "shall be discharged after the jury retires to consider its verdict" is a mandatory requirement that should be scrupulously followed. Because any benefit to be derived from deviating from the Rule is unclear and the possibility of prejudice so great, it is foolhardy to depart from the explicit command of Rule 24. Moreover, there is no rule providing that the parties, or the district court, may stipulate that an alternate be present during the jury's deliberations. Nevertheless, given the unique posture of the present case—where the parties stipulated and urged upon the court that the alternate be allowed to sit-in on the jury deliberations, and the alternate was expressly instructed not to participate in any way, not to say anything, not to vote, or otherwise do anything except be available in case the court found it necessary to substitute him for the ill juror—we are convinced that a new trial is not required unless on remand it is shown that there is a reasonable possibility that the presence of the alternate affected the jury's verdict. *See* United States v. Nash, 2 Cir. 1969, 414 F.2d 234, cert. denied, 396 U.S. 940, 90 S.Ct. 375, 24 L. Ed.2d 242; United States v. Hayutin, 2 Cir. 1968, 398 F.2d 944, cert. denied, 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374; *see also* Leser v. United States, 9 Cir. 1966, 358 F.2d 313.

■ Given the peculiar facts of this case, if the alternate in fact abided by the court's instructions to remain orally silent and not to otherwise indicate his views or attitude—in writing, by facial expressions, gestures, or the like—and if the presence of the alternate did not operate as a restraint upon the regular jurors' freedom of expression and action, we see little substantive difference between the presence of a mute (orally and otherwise) alternate during jury deliberations and the presence in the jury-room of an unexamined book which had not been admitted into evidence. *See* Paz v. United States, 5 Cir. 1973, 473 F.2d 662; Paz v. United States, 5 Cir. 1972, 462 F.2d 740; United States v. Staples, 5 Cir. 1971, 445 F.2d 863, cert. denied, 1972, 404 U.S. 1048, 92 S.Ct. 710, 30 L.Ed.2d 739; Farese v. United States, 5 Cir. 1970, 428 F.2d 178. On the other hand, sufficient prejudice and effect on the jury's verdict would be shown and, therefore, a new trial required if the alternate disobeyed the court's instructions and in any way participated in the jury deliberations, or if any regular juror was deterred in the free exercise of his independence of thought, expression, or action by the mere presence of a non-participating alternate during deliberations.

In framing relief "which will give due regard to the rights of the appellant, will likewise accord to the government an opportunity to preserve a fair conviction if *no prejudice is shown,* and which may thus avoid the necessity of another trial," we follow the procedure outlined in United States v. Barson, 5 Cir. 1970, 434 F.2d 127, 131, and in Paz v. United States, 5 Cir. 1972, 462 F.2d 740, 746. We remand to the court below with directions to conduct an evidentiary hearing to determine whether the alternate participated in any way in the deliberations; whether he took part in any votes of the jury; whether he indicated his views regarding any of the defendants in any way—orally or otherwise; and whether the mere presence of the alternate restrained any of the regular jurors in expressing his views or in exercising his independence of thought and action. The district court shall make and certify to this Court findings of fact and conclusions of law together with a transcript of the proceedings. Our determination whether to affirm the judgments of conviction or to reverse for a new trial will follow such certification. Jurisdiction of the appeal

is retained in this Court during the limited remand for the purpose stated.

■■ At oral argument counsel for defendants obliquely raised the issue whether the absence of the defendants from chambers when the stipulation regarding the alternate juror was entered into violated the defendants' right, under the Sixth Amendment and Fed.R. Crim.P. 43, to be present at every stage of their trial. Although many conferences in chambers may be regarded as a stage of the trial at which defendants have the right to be present, *see, e. g.,* McKissick v. United States, 5 Cir. 1967, 379 F.2d 754, the meeting here in question was not such a stage: (1) it was in the nature of a conference on a point of law; (2) the jury procedure adopted by the court as a result of the conference was urged by defense counsel and agreed to, without objection, by the defendants through their attorneys; and (3) in any event, no prejudice resulted from the defendants' absence since after the conference the procedure was fully explained to the defendants, accompanied by their attorneys, in open court with ample opportunity for objection. *See* United States v. Sinclair, 5 Cir. 1971, 438 F.2d 50; United States v. Gradsky, 5 Cir. 1970, 434 F.2d 880, cert. denied, 1971, 401 U.S. 925, 91 S.Ct. 884, 27 L.Ed.2d 828; United States v. Lewis, 5 Cir. 1970, 420 F.2d 686; Pope v. United States, W.D.Tex.1967, 287 F.Supp. 214, aff'd per curiam, 5 Cir. 1968, 398 F.2d 834, cert. denied, 1969, 393 U.S. 1097, 89 S.Ct. 886, 21 L.Ed.2d 787; *cf.* United States v. Garafolo, 7 Cir. 1967, 385 F.2d 200, vacated on other grounds, 1968, 390 U.S. 144, 88 S.Ct. 841, 19 L. Ed.2d 970.

Finally, we have carefully reviewed the record and find to be without merit the contentions of defendant Michael Marquez regarding (1) the denial of his motions *in limine,* for severance and for a continuance, (2) the misconduct on the part of the United States Attorney, (3) the admission, without objection, of statements of the co-conspirators, and (4) the sufficiency of the evidence.

The cause is remanded for the limited purpose of holding an evidentiary hearing as directed herein. Jurisdiction of the appeal is otherwise retained.

Remanded with directions.