United States Court of Appeals,

Eleventh Circuit.

No. 95-4729.

UNITED STATES of America, Plaintiff-Appellee,

v.

Santos ACEVEDO, Defendant-Appellant.

May 22, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-550-CR-KMM), K. Michael Moore.

Before TJOFLAT and EDMONDSON, Circuit Judges, and O'NEILL[*], Senior District Judge.

TJOFLAT, Circuit Judge:

Rule 24(c) of the Federal Rules of Criminal Procedure requires district judges to discharge any alternate juror who has not replaced a regular juror "after the jury retires to consider its verdict." In the case at hand, the district court forgot to dismiss the alternate jurors when the jury retired; as a consequence, the alternates participated in deliberations. When the court discovered its mistake, it dismissed the alternates and instructed the jury to begin deliberations anew—the jury thereafter found the defendant guilty as charged. The defendant now appeals, contending that either 1) the court's violation of Rule 24(c), with nothing more, or 2) the alternates' participation in deliberations required the district court to declare a mistrial. We disagree and therefore affirm.

I.

On March 15, 1995, Santos Acevedo was brought to trial in the Southern District of Florida on two federal weapons charges: possession of a firearm as a convicted felon, and possession of

---

[*]Honorable Thomas N. O'Neill, Jr., Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

ammunition as a convicted felon. *See* 18 U.S.C. § 922(g)(1) (1994). A jury of twelve and two alternates was empaneled; the trial consumed less than one day. Following closing argument, the court charged the jury and the jurors retired to deliberate.

The court, however, did not dismiss the alternates; they accompanied the twelve regular jurors to the deliberation room without objection. The fourteen jurors took less than one hour to conclude that the defendant was guilty on both counts of the indictment, to have the foreman fill out and sign the verdict form, and to inform the court that a unanimous verdict had been reached.[1] At this point, the court realized that the two alternates had participated in the jury's deliberations, and immediately notified the parties. After speaking to counsel, the court proposed that it dismiss the alternates and instruct the twelve regular jurors to begin their deliberations again. Acevedo objected, but offered no alternative solution. When the court indicated that it would implement its proposal, Acevedo moved for a mistrial. The court denied the motion and proceeded to bring the jury back into the courtroom.

After explaining the problem to all fourteen jurors—that the alternates should not have been present during jury deliberations—the court placed under seal the verdict form that had been executed. It instructed the twelve regular jurors "to commence deliberations as if anew, taking into consideration all of the instructions I previously gave you ...," and released them to re-deliberate. The court then "polled" the two alternates (the poll indicated that the sealed verdict represented their verdict) and, upon Acevedo's request, confirmed that the alternate who handed the court the verdict

---

[1]The jurors did not at this point indicate to the court whether they had found Acevedo defendant guilty or not guilty of the two charges in the indictment; as explained *infra,* the district court placed the fourteen jurors' verdict form under seal without examining its contents. Later, after the court adjudged Acevedo guilty pursuant to the verdict of the twelve regular jurors, the court unsealed the fourteen jurors' verdict; the court and the parties then learned for the first time that the fourteen jurors had also found Acevedo guilty as charged.

form had acted as foreman during the jury's initial deliberations. Having made these findings a part of the record, the court discharged the alternates.

The jury, now composed of only the twelve regular jurors, took approximately five minutes to return a verdict of guilty on both counts of the indictment. Following sentencing, Acevedo lodged this appeal.

Acevedo claims that he was entitled to a mistrial. His initial contention is that the district court's failure to discharge the two alternates in adherence to the letter of Rule 24(c) constituted reversible error as a matter of law.[2] Assuming that such failure did not, standing alone, require a mistrial, Acevedo contends that the court should have aborted the proceedings upon his motion because the prejudice he suffered from the alternates' presence in the deliberation room was incurable.[3]

We first review Acevedo's contention that the district court committed per se reversible error under a *de novo* standard, as it presents a question of pure law. We then review the trial court's decision to deny Acevedo's motion for mistrial for abuse of discretion. *See, e.g., United States v. Puentes,* 50 F.3d 1567, 1577 (11th Cir.1995); *United States v. Prince,* 883 F.2d 953, 962 (11th

---

[2]Acevedo's brief on appeal does not state explicitly that the district court's failure to discharge the alternates as required by Rule 24(c) was error per se; rather, we infer from Acevedo's argument that he considers such failure to require an automatic reversal. Acevedo, however, did not object to the court's failure to discharge the two alternates when the jury retired to deliberate; thus, the question arises whether he waived the court's violation of Rule 24(c). Because Acevedo, like the court and the prosecutor, did not know that the alternates had retired to deliberate with the twelve regular jurors, we consider Acevedo as having preserved his objection to the Rule 24(c) violation by moving the court for a mistrial once the court made known the alternates' presence in the jury room.

[3]Acevedo also challenges the sufficiency of the evidence to convict. This challenge is frivolous. The Government's proof was overwhelming: the defendant was a convicted felon, and he admitted to two law enforcement officers that the pistol and ammunition that formed the basis of his indictment were his.

Cir.1989). Finally, although Acevedo did not object to the court's curative instruction at trial, we review the instruction for plain error. *See* Fed.R.Crim.Pro. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). We conclude after review that Acevedo's contentions hold no merit; we therefore affirm his convictions.

II.

A.

 Acevedo's first argument—for an automatic mistrial—is easily disposed of; in *United States v. Allison,* 481 F.2d 468 (5th Cir.1973),[4] we explicitly rejected a rule of per se reversal for Rule 24(c) violations. *See id.* at 471 ("We ... are of the view that such an automatic rule is an improper standard to apply to the situation here at issue ...."); *see also United States v. Phillips,* 664 F.2d 971, 994 (5th Cir. Unit B 1981)[5] ("This Court ... does not apply a per se rule of reversal to Rule 24(c) violations."). In doing so, we declined to follow the Fourth and Tenth Circuits in *United States v. Virginia Erection Corp.,* 335 F.2d 868 (4th Cir.1964), and *United States v. Beasley,* 464 F.2d 468 (10th Cir.1972). Instead, we held that a Rule 24(c) violation does not necessitate a new trial unless there is a "reasonable possibility" that the violation prejudiced the defendant at trial. *See* 481 F.2d at 472.

In this case, we agree that the district court's oversight of Rule 24(c) posed a threat of prejudice to Acevedo because the court's failure to dismiss the alternates allowed them to enter the deliberation room. The Supreme Court has held that the mere presence of an alternate in the jury

---

[4]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[5]In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

room during deliberations is not inherently prejudicial to the defendant. *See United States v. Olano,* 507 U.S. 725, 739-41, 113 S.Ct. 1770, 1780-81, 123 L.Ed.2d 508 (1993). The Court, however, implied that once the alternate participates in any way—whether through words or gestures—prejudice is manifest. *See id.* at 739, 113 S.Ct. at 1780 (prejudice may arise "either because the alternates actually participated in the deliberations, verbally or through "body language'; or because the alternates' presence exerted a "chilling' effect on the regular jurors") (citations omitted); *United States v. Allison,* 481 F.2d 468, 472 (5th Cir.1973) (remanding to determine whether an alternate instructed merely to observe deliberations "participated in any way in the deliberations" and thereby caused the defendant prejudice). In Acevedo's case, it is obvious that the two alternates were full-fledged participants instead of silent observers; not only did the court instruct the alternates to deliberate with the regular jurors, the regular jurors treated the alternates as members of the jury, electing an alternate as their foreman. Thus, under *Olano,* we assume that the alternates were a prejudicial influence on the jury's deliberations.

A mistrial, however, is only warranted if there is a reasonable possibility that the district court's violation of Rule 24(c) *actually* prejudiced Acevedo by affecting the jury's *final verdict.*[6] *See*

_____

[6]The final verdict in this case is the verdict rendered by the twelve regular jurors after the district court's clean slate instruction. As noted *supra,* the jury composed of twelve regular jurors and two alternates informed the district court that they had reached a decision as to Acevedo's guilt. That decision, however, was not the final verdict pursuant to which Acevedo was adjudged guilty. *See United States v. Taylor,* 507 F.2d 166, 168 (5th Cir.1975) (establishing that a verdict is valid only if it is published in open court with no juror dissent). We therefore evaluate the alternates' effect only on the twelve-juror verdict. We reserve for another day the question of whether fourteen jurors can render a valid verdict. *Compare Williams v. Florida,* 399 U.S. 78, 102, 90 S.Ct. 1893, 1907, 26 L.Ed.2d 446 (1970) (stating that "the fact that the jury at common law was composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance except to mystics" (internal quotations and citation omitted)), *with United States v. Ottersburg,* 76 F.3d 137, 140 (7th Cir.1996) (reversing a district court's judgment of guilty under a plain error analysis because "[t]he criminal conviction before us is based on the verdict of a jury composed of more than the [12 jurors] permitted by Rule 24(c)").

*United States v. Allison,* 487 F.2d 339 (5th Cir.1973) (affirming the defendant's conviction because the district court determined on remand that there was "no reasonable possibility" that an alternate present during deliberations had affected the jury's final verdict). In other words, unless there is a reasonable possibility that the alternates' initial participation caused the twelve regular jurors who rendered the final verdict to convict instead of acquit, the Rule 24(c) violation is harmless error and Acevedo's convictions will stand.

B.

This brings us to Acevedo's second contention. He claims that we need not evaluate whether the district court cured the prejudice caused by the alternates' initial participation (by issuing its "clean slate" instruction) because that prejudice was *incurable.* Thus, Acevedo reasons, the district court abused its discretion when it denied his motion for mistrial based on the alternates' participation. *Cf. United States v. Dodd,* 111 F.3d 867, 870 (11th Cir.1997) (stating that if the trial court has issued a curative instruction, we will reverse a denial of a motion for mistrial based on evidentiary error only when "the evidence is so highly prejudicial as to be incurable by the trial court's admonition"). In *United States v. Phillips,* 664 F.2d 971 (5th Cir. Unit B 1981), *aff'g United States v. Meinster,* 484 F.Supp. 442 (S.D.Fla.1980), however, we held that the prejudice, if any, caused by the initial participation in deliberations of a *regular* juror who was excused for cause before the jury delivered its final verdict was curable. *See also United States v. Kopituk,* 690 F.2d 1289 (11th Cir.1982) (adopting *Phillips* wholecloth). We believe that *Phillips* controls our decision here.

In *Phillips,* as in Acevedo's case, the district court violated the letter of Rule 24(c) by failing to discharge an alternate juror when the jury retired to deliberate. The court in *Phillips,* however, did not simply neglect to dismiss the alternate, but purposefully held that alternate "in reserve"

against the possibility that the court would have to excuse a juror for cause during deliberations. *See Phillips,* 664 F.2d at 990.[7] When a regular juror suffered a heart attack during deliberations, the court excused that juror and recalled the alternate. *Id.* Before adding the alternate to the jury, the court questioned the alternate concerning her exposure to outside influences after the case was submitted to the jury (a precaution obviously not necessary in this case). *Id.* The court then

---

[7]When *Phillips* was decided, Rule 23(b) of the Federal Rules of Criminal Procedure did not authorize a verdict by a jury of fewer than twelve, absent stipulation by the parties. *See United States v. Taylor,* 507 F.2d 166, 168 (5th Cir.1975). Thus, if a juror was excused during deliberations, a district court was forced to declare a mistrial because fewer than twelve jurors could not return a valid verdict. *See id.* at 169. In *Phillips,* defense counsel had refused to stipulate to a verdict of fewer than twelve, and the possibility that a juror would be excused for cause during deliberations was not remote. *See United States v. Meinster,* 484 F.Supp. 442, 443 (S.D.Fla.1980) (noting that three jurors had already been excused for cause during the four-month long trial). The district court in *Phillips,* therefore, was faced with a Hobson's choice: risk warranting a mistrial by purposefully violating Rule 24(c) and keeping an alternate "in reserve" during trial, or risk being forced to grant a mistrial if a juror was excused before the jury returned its verdict. The *Phillips* court's holding on appeal—that a violation of Rule 24(c) is curable—eliminated this Hobson's choice by allowing a district court to hold an alternate in reserve without fear of automatic mistrial.

In 1983, however, Rule 23(b) was amended to read: "if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors." This amendment eliminated the need for a district court to violate Rule 24(c) if it wished to avoid a mistrial—the practice authorized by *Phillips.* Thus, at least one circuit has declared *Phillips* a dead letter. *See United States v. Huntress,* 956 F.2d 1309, 1315 (5th Cir.1992) ("We read the [amended] Rule 23(b), in conjunction with ... Rule 24(c), as requiring that district judges allow an 11-member jury to proceed to verdict or grant a mistrial.... The intent of the 1983 amendment to Rule 23(b) ... was to obviate the need for the *Phillips* procedure."). In this circuit, however, we continue to recognize that *Phillips* allows a district court to violate Rule 24(c) by substituting an alternate after deliberations have begun, as long as the court cures any prejudice resulting from the substitution. *See United States v. Guevara,* 823 F.2d 446, 448 (11th Cir.1987); *cf. United States v. Geffrard,* 87 F.3d 448, 452 (11th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 442, 136 L.Ed.2d 339 and *sub nom Landry v. United States,* --- U.S. ----, 117 S.Ct. 443, --- L.Ed.2d ---- (1996) (stating in a multi-defendant case in which the jury had already reached a verdict regarding two defendants that substitution of an alternate for a juror dismissed for cause was a permissible but not "favored" option for the district court). Thus, *Phillips* retains its precedential value for this case.

substituted the "reserve" alternate for the excused juror and instructed the jury (now composed of the eleven remaining regular jurors and the alternate) to begin deliberations again. *Id.* The jury eventually delivered a verdict of guilty. On appeal, the convicted defendant argued that the court's failure to dismiss the alternate in violation of Rule 24(c) was reversible error. *Id.* at 991-92. The court of appeals disagreed, holding that the district court had cured any prejudice caused by the late substitution. *Id.* at 996.

Although the Rule 24(c) violation in *Phillips* resulted in a fact pattern different from that in Acevedo's case, *Phillips* is identical to Acevedo's case in the only respect relevant to this appeal. In both cases, the threat of prejudice to the defendant arose at least in part because the excused juror (or in Acevedo's case, the two dismissed alternates) had an opportunity to influence the jury before he was excused. Thus, the excused juror may have convinced the jury to convict when it otherwise would have acquitted. Put a different way, in both *Phillips* and Acevedo's case there is a possibility that the final verdict did not reflect the independent judgment of the jurors rendering the verdict, but instead reflected an amalgamation of the judgments of every juror who participated at some point during the jury's deliberations.[8]

---

[8]Because the *Phillips* jury not only lost one of its original members, but also was forced to absorb a new member (the substituted alternate), the threat of prejudice to the defendant in *Phillips* also manifested in ways that are not relevant in Acevedo's case. The *Phillips* court was concerned that the remaining eleven regular jurors, having invested substantial time and effort in the deliberations, would coerce the alternate into voting for a particular verdict. *See Phillips,* 664 F.2d at 995-96. In Acevedo's case, this concern is obviously not present—there is no added juror to be coerced. The *Phillips* court was also concerned that the substituted alternate may have been exposed to outside influences while he was separated from the jury, and that the alternate would inject biases formed from exposure to those influences into the jury's deliberations. *See id.* at 990 (noting with approval that the district court had questioned the alternate concerning his exposure to outside influences). This threat also is not present in this case; Acevedo's alternates were never separated from the regular jurors and therefore had no opportunity to encounter outside influences. The defendant in *Phillips,* therefore, arguably suffered much more prejudice than did Acevedo—prejudice that was still, as explained *infra,* curable.

In *Phillips,* however, we held that the district court's curative procedures were sufficient to eliminate the threat of prejudice to the defendant resulting from the court's violation of Rule 24(c); thus, the violation was not incurable as a matter of law. We see no reason to hold differently here; the district court was within its discretion to deny Acevedo's motion for mistrial and to attempt to cure the prejudice caused by the alternates' participation by lesser means. Acevedo's argument—that he was entitled to a mistrial once the alternates participated in deliberations—fails.

## C.

The only remaining question, therefore, is whether the district court's clean-slate instruction eliminated the threat of prejudice to Acevedo posed by the alternates' initial participation; if so, the Rule 24(c) violation was harmless error.[9] Because Acevedo did not challenge the language of the

---

[9]We note that it is impossible, after a final verdict has been rendered, to ascertain the actual extent of the alternates' prejudicial influence. To determine the degree to which the alternates swayed the regular jurors during deliberations, we would need to delve into the substance of the jury's deliberations both while the alternates were present and after they were dismissed. Rule 606(b) of the Federal Rules of Evidence, however, prevents us from doing so.

> Rule 606(b) states:
>
> Upon an inquiry into the validity of a verdict ... a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

The exception for an inquiry into "extraneous prejudicial information" or "outside influence" does not apply in this case because the alternate jurors brought no extraneous information into the jury room. Thus, Rule 606(b) prevents any inquiry of the twelve regular jurors regarding "any matter or statement" made by a juror as well as the jurors' "mental processes." With these constraints, it is impossible for any court to determine the extent of the alternates' influence on the regular jurors once a final verdict has been rendered.

instruction at trial, we review it only for plain error. We find no error here; the instruction was sufficient to direct the twelve regular jurors to re-deliberate without regard to their initial decision.

We assume that jurors follow their instructions. *See Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985). Thus, because Acevedo presents no evidence to the contrary, we may assume that the twelve regular jurors began their deliberations anew as instructed, without influence from the now-absent alternates. The regular jurors were therefore able to deliver their final verdict free of prejudicial taint.

III.

In light of the district court's clean slate instruction, we hold that there is no reasonable possibility that the participation of the alternates in the jury's initial deliberations prejudiced Acevedo at trial, and that the court's oversight of Rule 24(c) is therefore harmless error. The district court's judgment is

AFFIRMED.

---

In *United States v. Watson,* 669 F.2d 1374 (11th Cir.1982), we were confronted with a fact pattern similar to the one in this case. In *Watson,* we suggested in dicta that we could remand the case to the district court for an evidentiary hearing to determine whether there was a reasonable possibility that an alternate present during deliberations in violation of Rule 24(c) had "in any manner affected the verdict." *Id.* at 1392. In light of Rule 606(b), however, we interpret *Watson* as suggesting a hearing only for the limited purpose of determining whether an alternate participated in deliberations or remained a silent observer—an inquiry that the district court may be able to conduct within the confines of Rule 606(b). *See Allison,* 481 F.2d at 472 (remanding for such an inquiry). In Acevedo's case, it is clear that the alternates did in fact participate; thus, there is no need for an evidentiary hearing here.