2003 WY 101

**Bruce HOOS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 00–224.

Supreme Court of Wyoming.

Aug. 26, 2003.

\* Chief Justice at time of expedited conference

Representing Appellant: Dion J. Custis, Cheyenne, Wyoming.

Representing Appellee: Hoke MacMillan, Wyoming, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN \*, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1]   In this appeal, the primary issue we must consider is whether the presence of the alternate juror for a brief forty minutes during jury deliberations presents reversible error.  Appellant Bruce Hoos was convicted for one count of conspiracy to commit livestock rustling and challenges the presence of the alternate as a constitutional violation.  He presents other issues; however, we agree that the presence of the alternate juror during deliberations warrants reversal and is dispositive of this appeal.

[¶ 2] We reverse and remand for a new trial on one count of conspiracy to commit livestock rustling.

## ISSUES

[¶ 3] Hoos and the State agree on the following statement of issues:

I. Whether the trial court violated Wyoming Rules of Criminal Procedure 24(e) and appellant's constitutional right to a fair jury when it allowed an alternate juror in the jury room during deliberations?

a. Did the trial court abuse its discretion and commit reversible error when it denied Appellant's motion for a mistrial?

II. Whether there was sufficient evidence to convict appellant of conspiracy without substantial evidence?

III. Whether the prosecution engaged in misconduct when he admitted inadmissible evidence to jury knowing that the evidence was improper 404(b) and 608 evidence?

## FACTS

[¶ 4] Tally Sharpe and Joseph Merante, college friends of Hoos' son, claimed they were recruited by Hoos to steal horses to sell to him. The two stole five horses from a Lusk, Wyoming, rancher and sold them to Hoos for $1,500.00. Hoos sold one of the stolen horses at a public auction. The purchaser of the horse was the Lusk rancher from whom the horses had been stolen. The sale prompted a police investigation during which Hoos told authorities that he had raised the horses, but he later admitted that he had bought the horses from Sharpe and Merante. Sharpe and Merante provided police with confessions implicating Hoos in a conspiracy to steal horses. Hoos was charged and tried for accessory before the fact in violation of Wyo. Stat. Ann. § 6–1–402(e) and conspiracy to commit livestock rustling in violation of Wyo. Stat. Ann. § 6–1–303 and § 6–4–402(c).

[¶ 5] Before trial, Hoos requested notice of W.R.E. 404(b) and W.R.E. 608 evidence that was not received and filed a motion in limine to prohibit the State from introducing prior misconduct evidence. The record shows that a pretrial order was entered prohibiting the State and its witnesses from mentioning prior drug usage and/or prior convictions involving the defendant. At trial, during Hoos' cross-examination, the State asked whether he had been fired as a brand inspector twenty years earlier for making out false expense vouchers. Hoos' objection to the line of questioning was sustained, and further questioning was prohibited; however, his motion for mistrial was denied.

[¶ 6] At the close of trial, the alternate juror retired with the rest of the jury to the jury room for deliberations. Forty minutes later, the jury notified the trial court that the alternate juror had not been dismissed. The court instructed the bailiff to notify the jury to stop deliberating and gave counsel two alternatives: either stipulate to a thirteen person jury or bring the jury back, discharge the alternate juror, and issue an instruction to the remaining jurors to disregard anything said by the alternate. Hoos objected and moved for a mistrial based on the error. The trial court denied the motion and instructed the jury to disregard the alternate juror's input and returned them to the jury room for further deliberations. The instruction given stated:

> For the rest of you, ladies and gentlemen, I am going to ask that you return to the jury room and deliberate and decide this case without any regard to [the alternate's juror's input]. If she participated, and we don't know whether she participated and had input in your deliberations at this point or not, but if she did, I will ask you to reconsider all of that deliberation without her input.

[¶ 7] The jury returned a verdict acquitting Hoos' on the accessory charge but convicting for the conspiracy. This appeal followed.

## DISCUSSION

[¶ 8] On appeal, Hoos contends that the trial court's failure to ascertain the extent of the alternate's input into the deliberations requires reversal and remand for a new trial because either (1) it is error per se; (2) the State failed to show the absence of prejudice; or (3) the trial court's instruction failed

to properly instruct the jurors to begin deliberations anew. This argument presents a question of law that we review de novo.

[¶ 9] Hoos focuses his argument on the plain language of W.R.Cr.P. 24(e), which provides:

> *Alternate jurors.*—The court may direct that not more than six jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the regular jurors. **An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.**

(emphasis added).

[¶ 10] We have previously decided that with proper procedural safeguards, an alternate juror who has been discharged may subsequently replace a juror although the jury has begun deliberations. *Alcalde v. State*, 2003 WY 99, ¶ 10. This case requires that we determine the prejudicial effect of a trial court's failure to dismiss an alternate juror as required by Rule 24. The rule is modeled after an early version of the federal rule of criminal procedure[1] and contains the same language that the United States Supreme Court has noted is mandatory. *United States v. Olano*, 507 U.S. 725, 737, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993).

Generally, our approach to such an instance is to look to federal case law for guidance in the interpretation of our rule of criminal procedure where the state and federal rules of criminal procedure are similar. *Brock v. State*, 981 P.2d 465, 469 (Wyo.1999).

[¶ 11] *Olano* examined whether a federal appeals court had properly applied the plain error review standard where attorneys had consented to the presence of an alternate during jury deliberations. The Court noted that a judge's failure to abide by the strictures of Rule 24(c) violates the cardinal principle that the deliberations of the jury shall remain private and secret in every case. *Olano*, 507 U.S. at 737, 113 S.Ct. at 1779. Although defense attorneys had consented to the alternate's presence and the trial court had instructed the jurors that the alternate was not to participate in the deliberations in any fashion, the Court held that the right to a jury free from outside influence cannot be waived. *Id.*

[¶ 12] *Olano* recognized that the presence of alternate jurors during jury deliberations might prejudice a defendant specifically or presumptively either because the alternates actually participated in the deliberations, verbally or through "body language," or because the alternates' presence exerted a "chilling" effect on the regular jurors. *Id.* at 739, 113 S.Ct. at 1780. *Olano's* particular facts did not require it to presume prejudice. *Id.* at 740, 113 S.Ct. at 1781. In Hoos' trial, no hearing was held to determine whether the alternate actually participated in jury deliberations, raising the issue of whether this matter should be remanded to the trial court for such a hearing. That option, however, appears to be precluded by W.R.E. 606(b)'s

---

1. F.R.Cr.P. 24(c) (West Group 1999) provided:

    ALTERNATE JURORS. The court may direct that not more than 6 jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict. Each side is entitled to 1 peremptory challenge in addition to those otherwise allowed by law if 1 or 2 alternate jurors are to be impanelled, 2 peremptory challenges if 3 or 4 alternate jurors are to be impanelled, and 3 peremptory challenges if 5 or 6 alternate jurors are to be impanelled. The additional peremptory challenges may be used against an alternate jury only, and the other peremptory challenges allowed by these rules may not be used against an alternate juror.

restrictions to the scope of inquiry that can be made into jury deliberations. It states:

> (b) *Inquiry Into Validity of Verdict or Indictment.*—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

*Olano* recognized that F.R.E. 606(b) would be implicated if a hearing had been requested; however, it determined that it need not address the issue on its facts. *Olano*, 507 U.S. at 740, 113 S.Ct. at 1781. Additionally, *Olano's* majority, concurring, and dissenting opinions all noted concern with protecting the integrity of jury deliberations and the difficulties in determining the effect on jury deliberations caused by an alternate's participation.

[¶ 13] Wyoming's W.R.Cr.P. 24(e) and W.R.E. 606(b) articulate the means for protecting the integrity of Wyoming jury deliberations, and we find that the more pertinent teachings of *Olano* should be carefully considered. "The presence of alternate jurors during jury deliberations is not the kind of error that 'affects substantial rights' independent of its prejudicial impact." *Olano*, 507 U.S at 737, 113 S.Ct. at 1779. We agree that, without more, the mere presence of alternate jurors during deliberations is not error per se and our ultimate inquiry is whether, by their presence, any participation occurred. We, therefore, assess whether the presence of an alternate juror throughout the deliberations of the jury prejudiced the defendant either "specifically or presumptively." *Id.* at 739, 113 S.Ct. at 1780. "[T]he Supreme Court has cautioned that some er-

rors to which no objection was made should be 'presumed prejudicial' if the defendant cannot make a specific showing of prejudice." *United States v. Brown,* 316 F.3d 1151, 1159 n. 3 (10th Cir.2003) (citing *United States v. Adams,* 252 F.3d 276, 285 (3d Cir.2001)(quoting *Olano,* 507 U.S. at 735, 113 S.Ct. at 1778)). We agree that the prejudice or its absence arising from an alternate's participation during jury deliberations cannot be assessed, and, in any event, after a verdict has been rendered an attempt could not be made without impermissibly inquiring into the effect of the matter upon each juror's mind in violation of Rule 606(b). *Manning v. Huffman,* 269 F.3d 720, 725 n. 2 (6th Cir. 2001).

[¶ 14] In this case, however, the particular facts show that participation must be presumed to have occurred. The trial court was notified during deliberations that the jury had been sent to the jury room to deliberate and presumably had been deliberating for some forty minutes before notifying the court of the alternate juror's presence. Because deliberations had actually commenced, participation either by words or gestures must be presumed to have occurred. The juror's participation requires that we determine that prejudice is manifest and the defendant has no obligation to show that he has been prejudiced by the error.

[¶ 15] Such participation by an alternate is a violation of W.R.Cr.P. 24(e). Trial courts are charged with the responsibility to consistently administer all procedural rules; however, we must disagree with Hoos' contention that this error is reversible error per se. Although Hoos may have no obligation to show error, the presumption of prejudice requires that the State show that the prejudicial influence of the alternate juror's participation in deliberations had no effect on the jury's final verdict. We have determined that, in some circumstances, adequate procedural safeguards or the trial court's curative action can overcome such prejudice and "ensure that the defendant received a fair trial." *See Alcalde,* 2003 WY 99, ¶ 10 (prejudice can be rebutted "upon a showing that adequate procedural safeguards were undertaken," but case reversed because trial court did not utilize adequate procedural safeguards).

[¶ 16]   W.R.E. 606 does not prohibit inquiry of jurors during trial that is limited to an assessment of whether jurors will be able to begin deliberations anew upon receiving instructions designed to cure prejudice arising from the failure to dismiss the alternate on schedule.   Recognizing the rule violation, the trial court attempted to cure the error by dismissing the alternate and instructing the jury to begin deliberations anew.   The prejudice to the defendant posed by the alternate's presumed participation required that upon discharging the alternate juror, the trial court should have instructed the remaining jurors to "recommence deliberations anew and [should have inquired] whether they would be capable of disregarding their previous deliberations and any opinions formed during those deliberations." *Alcalde,* ¶ 9.

■   [¶ 17]   Only by these curative instructions and procedural safeguards can the State show the absence of prejudice regarding the jury's final verdict.   The trial court's failure to inquire of the remaining jurors necessitates that we find that the State has not carried its burden of proving that the alternate's participation had no prejudicial influence on the jury's deliberations and final verdict.   Consequently, this case is reversed and remanded for new trial on the conspiracy charge.

[¶ 18]   Reversed and remanded for proceedings consistent with this opinion.

GOLDEN, J., delivers the opinion of the court; LEHMAN, J., files a dissenting opinion.

LEHMAN, Justice, dissenting.

[¶ 19]   I respectfully dissent.

[¶ 20]   I agree that the inadvertent failure to dismiss the alternate juror violated W.R.Cr.P. 24(e), which specifies, "An alternate juror who does not replace a regular juror *shall* be discharged after the jury retires to consider its verdict." (Emphasis added.)   However, while it is surely error to allow an alternate to participate in jury deliberations, I cannot say that the inadvertent presence of an alternate, who is for all purposes as qualified as every other juror in a case, for a portion of the deliberations irretrievably prejudices the regular jury.

[¶ 21]   In *United States v. Olano,* 507 U.S. 725, 737–38, 113 S.Ct. 1770, 1779–80, 123 L.Ed.2d 508 (1993) (emphasis added), the Court stated:

The presence of alternate jurors during deliberations is not the kind of error that *"affect[s] substantial rights" independent of its prejudicial impact. . . .*

. . . Although the presence of alternate jurors does contravene " 'the cardinal principle that the deliberations of the jury shall remain private and secret,' " Advisory Committee's Notes on Fed.RuleCrim.Proc. 23(b), 18 U.S.C.App., p. 785 (quoting *United States v. Virginia Erection Corp.,* 335 F.2d 868, 872 (C.A.4 1964)), the primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence.   *"[I]f no harm resulted from this intrusion [of an alternate juror into the room,] reversal would be pointless."*   *United States v. Watson,* 669 F.2d 1374, 1391 (C.A.11 1982).

Such statements suggest a harmless error standard be applied in jury intrusion situations, especially considering that the phrase "substantial rights" appears in both the plain error and the harmless error standard. W.R.Cr.P. 52(a) and (b).

[¶ 22]   In that respect I would embrace the analysis of the Eleventh Circuit in *United States v. Acevedo,* 141 F.3d 1421 (11th Cir.1998).   In *Acevedo,* the alternate jurors were inadvertently sent to deliberate with the regular jury and did, in fact, deliberate with the jury for less than an hour, even reaching a unanimous verdict.   *Id.* at 1422. The judge sealed the verdict, dismissed the alternates, and instructed the regular jurors "to commence deliberations as if anew, taking into consideration all of the instructions I previously gave you."   *Id.* at 1423.   The jury deliberated for approximately five more minutes and returned a guilty verdict.   *Id.* Acevedo made a motion for mistrial, which the district court denied.   On appeal, Acevedo claimed that the error was reversible as a matter of law and that the prejudice he suffered from the alternates' presence was incurable.

[¶ 23]   In resolving this issue, the Eleventh Circuit opined:

The Supreme Court has held that the mere presence of an alternate in the jury room

during deliberations is not inherently prejudicial to the defendant. *See United States v. Olano,* 507 U.S. 725, 739–41, 113 S.Ct. 1770, 1780–81, 123 L.Ed.2d 508 (1993). The Court, however, implied that once the alternate participates in any way—whether through words or gestures—prejudice is manifest. *See id.* at 739, 113 S.Ct. at 1780 (prejudice may arise "either because the alternates actually participated in the deliberations, verbally or through 'body language'; or because the alternates' presence exerted a 'chilling' effect on the regular jurors" (citations omitted)).

*Id.* at 1424. Nevertheless, the decision then went on to say that the court would assume that the alternates were a prejudicial influence on the jury's deliberations but that a mistrial is only warranted if there is a reasonable possibility that the violation ***actually prejudiced*** Acevedo by affecting the jury's ***final*** verdict. *Id.* The Eleventh Circuit further decided that any prejudice caused by such an error is in fact curable. Therefore, the true question becomes whether the district court's instruction eliminates the threat of prejudice to the defendant posed by the alternate's initial participation. *Id.* at 1426.

[¶ 24] In *Olano,* at least one alternate juror stayed for the entire deliberations. Here, the alternate was in deliberations for only forty minutes and was excused before a verdict was reached. While time is not necessarily determinative of the level of prejudice, it may indicate the extent to which the alternate actually participated. Furthermore, it must be recognized that an alternate juror is not simply an outside intrusion. I simply cannot equate an alternate juror to a stranger. I agree with the statement made by Justice O'Connor in *Olano,* when she said:

> The Court of Appeals was incorrect in finding error "inherently prejudicial." Until the close of trial, the 2 alternate jurors were indistinguishable from the 12 regular jurors. Along with the regular jurors, they commenced their office with an oath, received the normal initial admonishment, heard the same evidence and arguments, and were not identified as alternates until *after* the District Court gave a final set of instructions.

*Olano,* at 740, 113 S.Ct. at 1781 (citations omitted.) I would further add that, under our established rules in Wyoming, the alternate juror was required to go through the same voir dire process, to have the same impartiality, and to have the same qualifications as the regular juror counterparts. Thus, I would hold that whatever prejudice might have resulted from the alternate's presence was minimal in this case.

[¶ 25] The ultimate inquiry is whether the trial court's instructions cured the threat of prejudice. We have long held we assume that the jurors followed the court's instructions. *Marquez v. State,* 12 P.3d 711, 717 (Wyo.2000) (citing *Burke v. State,* 746 P.2d 852, 857 (Wyo.1987)). The jury was instructed to disregard what the alternate had said. The jurors were to "reconsider all of that deliberation without her input." While the instruction was not as explicit as that in *Acevedo,* explicitly informing the jury that they should begin anew, I would consider it sufficient in this case.

[¶ 26] Accordingly, I would hold that, in light of the judge's instruction, the violation of Rule 24(e) did not affect Hoos' substantial rights and is, therefore, harmless error.