2003 WY 104

**Mark McADAMS, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 01–190.**

Supreme Court of Wyoming.

Aug. 28, 2003.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ, and SANDERSON, D.J.

VOIGT, Justice.

[¶1]   In June 2001, a jury found appellant, Mark McAdams, guilty of attempted first-degree murder in violation of Wyo. Stat. Ann. §§ 6–1–301 and 6–2–101 (Lexis 1999). The district court sentenced McAdams to life imprisonment.   On appeal, McAdams argues that his conviction should be reversed because the alternate juror was not discharged until one hour and twenty-five minutes after the jury retired to deliberate, because the district court failed properly to instruct the jury prior to closing arguments, and because McAdams' trial counsel was ineffective in not moving to suppress certain statements a trial witness attributed to McAdams.   We reverse and remand for a new trial.

## ISSUES

[¶2]   McAdams raises the following issues:

1.   Whether the district court denied McAdams his constitutional right to a fair trial by allowing an alternate juror to participate in the jury's deliberations in contravention of W.R.Cr.P. 24(e).

2.   Whether the district court committed plain error and denied McAdams his constitutional right to a fair trial by failing to give all instructions to the jury before closing argument began, in violation of W.R.Cr.P. 30 and Wyo. Stat. Ann. § 7–11–201 (LexisNexis 2003).

3.   Whether McAdams' counsel was ineffective in failing to move to suppress incriminating statements made by McAdams to law enforcement officers during a custodial interrogation where the officers failed to advise McAdams of his *Miranda* rights?

## FACTS

[¶3]   McAdams and Melvin Slaton (Slaton) were inmates at the Wyoming State Penitentiary in Rawlins.   On October 27, 2000, Slaton was released from his cell to a designated "day" room within the cellblock

Representing Appellant:   Kenneth Koski, Public Defender;   Donna D. Domonkos, Appellate Counsel;   Tina N. Kerin, Senior Assistant Appellate Counsel;   Diane E. Courselle, Director, Wyoming Defender Aid Program; Lyndsay Hoyt, Student Director;   LaMar F. Jost, Megan E. Overmann and Anna Reeves, Student Interns.

Representing Appellee:   Hoke MacMillan, Attorney General;   Paul S. Rehurek, Deputy Attorney General;   D. Michael Pauling, Senior Assistant Attorney General;   and Ericka S. Cook, Assistant Attorney General.

for one hour of recreational time. The corrections officer charged with releasing inmates for this purpose testified that he did not actually see Slaton enter the day room and, because of that, the officer assumed Slaton was still in his cell. The officer then mistakenly released McAdams from his cell to take a shower without first closing the day room door or otherwise securing Slaton in the day room.

[¶ 4] According to Slaton, McAdams ran into the day room while Slaton was reading the newspaper and proceeded to stab Slaton with a knife. Slaton then exited the room to a nearby area of the cellblock, where, according to Slaton, McAdams grabbed a broom handle and attempted to "poke" Slaton with it. Corrections officers arrived at that location and two officers observed a knife in McAdams' right hand. The officers told McAdams to "lock down," and McAdams eventually returned to his cell. However, the knife was never found.

[¶ 5] Slaton presented at the emergency room with eight stab wounds to his back, upper arm, left chest wall, hand, and face, and according to the emergency room physician, at least four of these stab wounds "could have been life-threatening...." One or more of the wounds were a "little more than" three inches deep.

[¶ 6] McAdams was charged with attempted first-degree murder. In June 2001, a jury found McAdams guilty, and the district court sentenced him to a life term of imprisonment. McAdams now appeals from that judgment and sentence.

## DISCUSSION

### ALTERNATE JUROR

[¶ 7] McAdams first argues that his conviction should be reversed because the district court failed properly to discharge the alternate juror after the jury retired to consider its verdict, in violation of W.R.Cr.P. 24(e) and his federal and state constitutional rights to a fair trial. At trial, after the district court discovered that the alternate juror had been present in the jury room while the jury was deliberating, McAdams' counsel agreed that the alternate juror should be dismissed, but did not otherwise object to the alternate juror's presence during the jury's deliberations. Accordingly, the plain error standard of review applies, and McAdams must demonstrate on appeal that "the record clearly shows an error that transgressed a clear and unequivocal rule of law which adversely affected a substantial right." *Compton v. State*, 931 P.2d 936, 939 (Wyo.1997).

[¶ 8] The record clearly reflects what occurred at trial without resorting to speculation. The district court impaneled a jury of thirteen individuals, including one alternate juror. Following closing arguments, all thirteen jurors retired to the jury room to consider their verdict; the alternate juror was not discharged. After approximately one hour and twenty-five minutes, the district court met with counsel in chambers, and all agreed that the alternate juror should be discharged, but it does not appear from the record that the district court instructed the remaining jurors to disregard the alternate juror's input and begin their deliberations anew. Approximately one hour and eighteen minutes later (including the noon hour),[1] the jury informed the district court that it had reached a verdict.

[¶ 9] By failing properly to discharge the alternate juror, the district court violated a clear and unequivocal rule of law. W.R.Cr.P. 24(e) provides, in pertinent part:

The court may direct that not more than six jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the

---

1. The record is silent as to the length of any lunch break the remaining jurors may have taken during the one hour and eighteen minutes between the time the alternate was dismissed and a verdict was announced.

same functions, powers, facilities and privileges as the regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.

[¶ 10] What effect such a violation had on the jury's deliberations, and ultimately, its final verdict, is the key factor in evaluating whether the violation affected McAdams' substantial rights. In two recent decisions, *Alcalde v. State*, 2003 WY 99, ¶¶ 8–11, 74 P.3d 1253, 1257–59 (Wyo.2003) and *Hoos v. State*, 2003 WY 101, ¶¶ 10–17, —— P.3d ——, ——, slip op. at 3–5 (Wyo.2003) (No. 00–224, published 8/26/03), we established an analytical framework for resolving this issue. We evaluate whether the alternate juror's presence in the jury room during the jury's deliberations prejudiced the defendant, and also whether the court acted or utilized sufficient procedural safeguards to "obviate the danger of prejudice to the defendant." *Alcalde*, 2003 WY 99, ¶ 9, 74 P.3d at 1258.

[¶ 11] The mere presence of an alternate juror during jury deliberations, without more, "is not error per se and our ultimate inquiry is whether, by [the alternate juror's] presence, any participation occurred." *Hoos*, 2003 WY 101, ¶ 13, —— P.3d at ——, slip op. at 4. Thirteen jurors, including the alternate juror, retired to consider a verdict in the instant case. Neither McAdams, nor his counsel, expressly consented to the alternate juror's presence during the jury's deliberations, and the district court had not previously instructed the alternate juror to remain a silent observer and not participate in the jury's deliberations; indeed, prior to discharging the alternate juror, no one informed the jurors on the record that a particular juror had been designated the alternate juror. After approximately one hour and twenty-five minutes, the district court discovered that it had not discharged the alternate juror. "Because deliberations had actually commenced, participation either

by words or gestures must be presumed to have occurred." *Id.* at ¶ 14, 75 P.3d at 669, slip op. at 5.[2]

[¶ 12] The "prejudice or its absence arising from an alternate [juror]'s participation during jury deliberations cannot be assessed" and "after a verdict has been rendered an attempt could not be made without impermissibly inquiring into the effect of the matter upon each juror's mind in violation of [W.R.E. 606(b) ]." *Id.* at ¶ 13, 75 P.3d at 668–669, slip op. at 5. The alternate juror's participation during the deliberations in the instant case therefore "requires that we determine that prejudice is manifest and [appellant] has no obligation to show that he has been prejudiced by the error." *Id.* at ¶ 14, 75 P.3d at 669, slip op. at 5.[3] Further,

> the presumption of prejudice requires that the State show that the prejudicial influence of the alternate juror's participation in deliberations had no effect on the jury's final verdict. We have determined that, in some circumstances, adequate procedural safeguards or the trial court's curative action can overcome such prejudice and "ensure that [appellant] received a fair trial." *See Alcalde*, 2003 WY 99, ¶ 10[, 74 P.3d 1253] (prejudice can be rebutted "upon a showing that adequate procedural safeguards were undertaken," but case reversed because trial court did not utilize adequate procedural safeguards).

*Hoos*, 2003 WY 101, ¶ 15, —— P.3d at ——, slip op. at 5.

[¶ 13] The record in the instant case does not reveal any curative action taken, or procedural safeguards utilized, by the district court upon discovering that it had failed properly to discharge the alternate juror.

> The prejudice to [appellant] posed by the alternate [juror]'s presumed participation required that upon discharging the alternate juror, the trial court should have instructed the remaining jurors to "recom-

---

2. In the instant case, the alternate juror was present during the jury's deliberations for one hour and twenty-five minutes, as opposed to *Hoos*, wherein the alternate juror was present for forty minutes. *Hoos*, 2003 WY 101, ¶ 14, —— P.3d at ——, slip op. at 5.

3. *See also Alcalde*, 2003 WY 99, ¶ 9, 74 P.3d at 1258 (the substitution of an alternate juror in mid-deliberation "raises a presumption of prejudice to the defendant's right to a fair trial").

mence deliberations anew and [should have inquired] whether they would be capable of disregarding their previous deliberations and any opinions formed during those deliberations." *Alcalde*, ¶ 9[, 74 P.3d 1253].

Only by these curative instructions and procedural safeguards can the State show the absence of prejudice regarding the jury's final verdict. The trial court's failure to inquire of the remaining jurors necessitates that we find that the State has not carried its burden of proving that the alternate [juror]'s participation had no prejudicial influence on the jury's deliberations and final verdict.

*Hoos*, 2003 WY 101, ¶¶ 16–17, —— P.3d at ——, slip op. at 5. Accordingly, we find that the alternate juror's participation during the jury's deliberations in the instant case affected the jury's final verdict, which necessarily implicated McAdams' right to a fair trial, "the cardinal principle that the deliberations of the jury shall remain private and secret in every case,"[4] and considering the particular facts of this case, affected his substantial rights.

### OTHER ISSUES

[¶ 14] McAdams contends that the district court erred by failing to reread its preliminary jury instructions immediately prior to closing argument and that McAdams' trial counsel was ineffective in not moving to suppress statements that, according to a trial witness, McAdams purportedly made in his prison cell, a "non-contact" visitation room, and/or the prison infirmary fol-

lowing the incident at issue.[5] Without commenting on the validity of these appellate arguments, we anticipate that, on remand, the district court will have an opportunity to address any objection to the manner in which it instructs the jury, and McAdams' trial counsel will duly assess the merits of filing a motion to suppress the referenced statements.

[¶ 15] Reversed and remanded for a new trial.

---

4. *Hoos*, 2003 WY 101, ¶ 11, —— P.3d at ——, slip op. at 3 (*citing United States v. Olano*, 507 U.S. 725, 737, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), *cert. denied*, 519 U.S. 931, 117 S.Ct. 303, 136 L.Ed.2d 221 (1996)).

5. McAdams challenges three statements that a corrections officer attributed to him after the alleged stabbing incident:
   1. After corrections officers told McAdams to "lock down," McAdams eventually returned to his cell. Two corrections officers then went to McAdams' cell, handcuffed him, and ordered him to kneel on his bunk and face the wall while they searched for the knife. Upon noticing a cut on McAdams' right leg, one officer asked McAdams, "you cut yourself?" According to the officer, McAdams replied "in all the cutting I was doing I accidentally cut myself."

   2. The same officer then asked McAdams "where's the blade?" According to the officer, McAdams replied "[i]t's gone, it's not here, it's been taken care of."
   3. At some point, McAdams arrived at the prison infirmary. At the infirmary, the same corrections officer asked McAdams why he "had done this," to which McAdams purportedly replied "well, if he dies it's just another dead CHIMO [slang for child molester] nigger." At the time, McAdams was "in a full set of restraints" while receiving medical treatment for his leg wound.
   McAdams contends that his trial counsel was ineffective in not moving to suppress these statements because the corrections officer did not inform McAdams of his *Miranda* rights prior to obtaining the statements.