In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2055

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LI XIN WU,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 799-8—**Ronald A. Guzmán**, *Judge.*

ARGUED NOVEMBER 2, 2011—DECIDED DECEMBER 28, 2011

Before EASTERBROOK, *Chief Judge,* and POSNER and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Li Xin Wu was convicted after a jury trial on one count of conspiracy to possess a controlled substance with intent to distribute, in violation of 21 U.S.C. §§ 841 and 846, and 18 U.S.C. § 2, and one count of conspiracy to import a controlled substance into the United States, in violation of 21 U.S.C. §§ 952, 960, and 963, and 18 U.S.C. § 2. On appeal, Wu raises a

variety of arguments challenging both his conviction and sentence: he takes issue with the district court's rejection of two of his proposed jury instructions; he asserts that immunized statements were used against him at trial; he contends that alternate jurors inappropriately deliberated with the petit jury; and finally, he challenges his guidelines calculation. We find no error, however, and therefore affirm.

**I**

Beginning in late 2003, several people in Chicago's Chinatown neighborhood began importing large quantities of marijuana and methylene-dioxymethamphetamine (MDMA, or as it is commonly known, Ecstasy) from Canada into Chicago. Wu started participating in this operation a few months after it began. Initially, he rented a warehouse in Chinatown for the group to use to store the drugs. Over the course of the next year, Wu received multiple loads of marijuana and MDMA from the drug ring's Canadian suppliers. He purchased some of it for resale to his own customers and stored the rest for his codefendants to sell to their customers. Wu, who is fluent in both English and Cantonese, also served as a translator for participants in the operation.

Federal agents learned about the drug ring in early 2005 when one of its members sold MDMA to a government informant. Agents later met with Wu, who at first denied involvement but eventually, over the course of eight meetings, provided the government with many details about the operation and its members. At Wu's trial the

government offered uncontroverted evidence that Wu voluntarily participated in these meetings and that its agents never made any promises to Wu nor offered him immunity. Although at first Wu was very cooperative, by the final meeting in July 2007 he denied his role in the offense and minimized his conduct.

In September 2008, a grand jury returned a 13-count indictment charging 20 people with various federal offenses relating to the drug ring. Wu was named in two of those counts. All of Wu's codefendants either fled the jurisdiction or reached agreements with the government. Wu opted for a trial and was found guilty by a jury of both counts charged in the indictment.

## II

### A

Wu first contends that the district court erred by rejecting two of his requested jury instructions, covering the topics of aiding and abetting and multiple conspiracies. We review instructions *de novo* to determine whether they were correct and complete statements of the law. *United States v. Tanner*, 628 F.3d 890, 904 (7th Cir. 2010). If the instructions as given were accurate, we will defer to the district court's choice of language and not disturb them. *United States v. Ashqar*, 582 F.3d 819, 822 (7th Cir. 2009). The government argues that we should review in this instance only for plain error because (it says) Wu failed to object to the final instructions after the court rejected his requested versions. See,

*e.g., United States v. Mims*, 92 F.3d 461, 465 (7th Cir. 1996) ("The court's refusal to give a tendered instruction does not automatically preserve an objection to the instruction actually given."). Given our conclusion that there was no error at all, however, we need not worry here about the difference between plain error and the ordinary standard of review.

With respect to aiding and abetting, Wu asked the court to give the Seventh Circuit's pattern instruction, which instructs the jury that a defendant must "knowingly associate with the criminal activity, participate in the activity, and try to make it succeed," in order to be liable as an accomplice. PATTERN CRIMINAL FEDERAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT § 5.06. The district court rejected this request and instead told the jury that a defendant can be convicted of aiding and abetting if "he or she tries to help the conspiracy succeed by committing an act in furtherance of the conspiracy and had knowledge of the conspiracy's purpose at the time he commits the act."

Wu argues that the district court's instruction left out the element of "knowing association." Knowing association is important for accessory liability because it prevents the conviction of a person on a guilt-by-association theory: someone who is "simply passively present during the transaction" should not be convicted of aiding and abetting that transaction. *United States v. Heath*, 188 F.3d 916, 921 (7th Cir. 1999). The prosecution must instead also "show that the defendant shared the principal's criminal intent," *United States v. Sewell*, 159 F.3d

275, 278 (7th Cir. 1998); it does so by proving "knowing association."

But a judge is not limited to the exact phrase "knowing association" in order to convey this concept to the jury. Elsewhere we have explained that aiding and abetting "requires *knowledge* of the illegal activity that is being aided and abetted, a *desire* to help the activity succeed, and some *act* of helping." *United States v. Zafiro*, 945 F.2d 881, 887 (7th Cir. 1991); see also *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (L. Hand, J.) (accessory liability requires that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed").

Although we would have preferred something closer to the *Zafiro* or Hand formulation, the court's instruction adequately captured the required meaning. The jury here was told that the government had to prove that Wu had knowledge of the conspiracy's purpose, that he tried to help the conspiracy succeed, and that he committed some act in furtherance of the conspiracy. The phrase "tries to help" may not as clearly evoke intent as the words "desire to help." But the district court's choice of words here conveyed the critical idea to the jury: that Wu could be convicted only if he sought to advance the conspiracy's criminal goal. The court was also careful to instruct the jury that "association with conspirators is not by itself sufficient to prove [Wu's] participation in a conspiracy." In the final analysis, we find nothing in this instruction that

warrants reversal of Wu's conviction for aiding and abetting.

Second, Wu challenges the district court's rejection of his request for an instruction on multiple conspiracies. Wu wanted the following instruction:

> You must decide whether the conspiracy charged in the indictment existed, and if it did, who at least some of its members were. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed. Similarly, if you find that the defendant was not a member of the charged conspiracy, then you must find the defendant not guilty, even though the defendant may have been a member of some other conspiracy.

The district court refused to give this instruction; indeed, it gave no instruction on multiple conspiracies.

This was exactly the right thing to do, because Wu's requested instruction on multiple conspiracies was not an accurate statement of the law. See, *e.g.*, *United States v. Wilson*, 134 F.3d 855, 865 (7th Cir. 1998). Wu's proposal implies that the jury must acquit if the government does not prove that the conspiracy as charged in the indictment existed, even if it proves that some other conspiracy existed. As we have repeatedly explained, this is incorrect because the government is free to proceed on a subset of allegations in the indictment and prove a conspiracy smaller than the one alleged. See *id.*; see also *United States v. Duff*, 76 F.3d 122, 126 (7th Cir. 1996); *United States v. Townsend*, 924 F.2d 1385, 1410

(7th Cir. 1991). In order for a defendant to be entitled to an instruction, she must first show that it is an accurate statement of the law. *United States v. Knope*, 655 F.3d 647, 662 (7th Cir. 2011). Wu has not met this requirement and thus we find no error in the court's rejection of his proposed instruction.

B

Wu next takes issue with the government's introduction of his statements against him at trial. He asserts that the government granted him use immunity and thus that the admission of his statements violated his Fifth Amendment right against self-incrimination. See generally *United States v. Cozzi*, 613 F.3d 725, 730 (7th Cir. 2010) (discussing the relation between use immunity and the Fifth Amendment as established by *Kastigar v. United States*, 406 U.S. 441, 453 (1972)). We normally review a district court's factual determination that a defendant had not been granted use immunity for clear error, *United States v. Nelson*, 851 F.2d 976, 978 (7th Cir. 1988), but because Wu did not object to the admission of his statements at trial, our review here is only for plain error. *United States v. Olano*, 507 U.S. 725, 731 (1993); *United States v. Stark*, 507 F.3d 512, 520 (7th Cir. 2007). In any event, the two inquiries overlap because for error to be plain it must be "clear or obvious." *United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011).

The district court's determination that Wu had not been granted use immunity was not clearly erroneous. At trial, an FBI agent testified under oath in response to

both direct and cross-examination that the government did not make any promises to Wu or offer him immunity. Wu did not present any evidence to the contrary or move to exclude the statements. The court was entitled to credit the agent's testimony. Once it did so, there was a solid basis for the court to conclude that Wu had not been offered use immunity. Wu has pointed to nothing on appeal that suggests this decision was erroneous. There is thus no need for a remand for an evidentiary hearing.

C

Wu also argues that we should reverse, or at least remand for an evidentiary hearing, because two alternate jurors may have deliberated with the petit jury. Wu failed to raise this issue until his post-trial motions and thus we again review for plain error. Wu would meet this standard if he could show that alternate jurors were in fact present with the jury when deliberations began. See *United States v. Ottersburg*, 76 F.3d 137, 138 (7th Cir. 1996). The Federal Rules of Criminal Procedure prohibit alternate jurors from deliberating with the petit jury: a district court must "ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged." FED. R. CRIM. P. 24(c)(3). We have held that a violation of this rule is plain error. *Ottersburg*, 76 F.3d at 139 (considering an earlier version of Rule 24(c), which required the court to discharge alternate jurors after the jury begins deliberation). If the defendant can show that the

"substantive participation of alternates" has taken place, this is "sufficient to establish prejudice." *Id.* at 140; see also *Manning v. Huffman*, 269 F.3d 720, 726 (6th Cir. 2001) ("[W]e hold that Manning's evidence that an alternate juror participated in jury deliberations is sufficient to demonstrate prejudice."); *United States v. Acevedo*, 141 F.3d 1421, 1424 (11th Cir. 1998) ("[O]nce the alternate participates in any way—whether through words or gestures—prejudice is manifest.").

If the evidence in this record established that the alternates had actually engaged in substantive deliberations with the jurors, as in *Ottersburg*, then we would find plain error and reverse. If the record suggested that the alternates may have so participated, then we could remand for an evidentiary hearing under *Remmer v. United States*, 347 U.S. 227 (1954), to determine whether this in fact occurred. We are satisfied, however, that the evidence in this record, if it does anything at all, points the other way and indicates that no meaningful interactions could have occurred between the alternates and the petit jury that would require either reversal or a hearing. Only 10 to 15 minutes elapsed after the jurors were dismissed from the courtroom to begin deliberations until the alternate jurors were brought back to the courtroom. Even if we assume that the two alternate jurors left the courtroom with the petit jury and headed with them to the jury deliberation room, they would have had to spend time traveling between the 17th floor of the Dirksen Courthouse, where the courtroom was located, and the 12th floor jury room, before any deliberations could have started. In addition,

the record reflects that the alternate jurors spent some of that 15-minute period apart from the petit jury, waiting in a separate room to be brought back into the courtroom.

We do not know anything more than this, unfortunately, because Wu failed to raise the issue in a timely fashion. If he had, the district court could have asked the alternate jurors whether they had ever entered the deliberation room, and if so, whether the jury had moved past discussing preliminary matters (or, perhaps, having its afternoon snack). Wu thus bears some of the responsibility for whatever opacity there is in the record. Common sense tells us, however, that there was literally not enough time for the jury to begin deliberating, once the entire group headed down five floors, found the new room, and settled down. Especially because we know that the alternates were separated from the jury for at least part of the time, we conclude that there was no plain error here and no need for an evidentiary hearing.

D

Finally, Wu challenges his sentence. He argues that the district court should have reduced his offense level by two under the Sentencing Guidelines's "safety valve" provision. See 18 U.S.C. § 3553(f). The district court found Wu ineligible for the safety valve because in its view he did not meet the requirement of Section 3553(f)(5): "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the

defendant has concerning the offense." We review a district court's determination that a defendant is ineligible for the safety valve reduction for clear error. *United States v. Gonzalez*, 319 F.3d 291, 299 (7th Cir. 2003).

Wu relies on *United States v. Shrestha*, 86 F.3d 935 (9th Cir. 1996), to argue that defendants who ultimately recant some of their earlier, truthful statements to the government should not be ineligible for the safety valve reduction. But *Shrestha* did not hold that defendants who recant truthful statements *must* be given a safety valve reduction. It held only that those defendants are not rendered "ineligible for the safety valve reduction as a matter of law." *Id.* at 940. The Ninth Circuit thus upheld a district court's grant of the safety valve adjustment to a recanting defendant. *Id.* Here, in contrast, the district court denied the reduction. It believed that Wu's credibility had been undermined by inconsistencies in his statements and his ultimate retraction. As the district court explained, "The problem comes in where you have a defendant whose final and last statement is a retraction and a denial of his previous disclosures, however honest those may have been."

As in *Shrestha*, it would likely have been within the district court's discretion in this case to conclude that Wu had been truthful with the government in his earlier proffers. It thus could have decided that Wu was eligible for the safety valve reduction despite his ultimate recantation. Wu's problem is that the district court came to the opposite conclusion. The court is entitled to refuse to apply the safety valve adjustment

when it finds that "[the defendant's] proffer was no longer reliable" because the defendant "dishonestly claimed to have forgotten the information previously conveyed." *Gonzalez*, 319 F.3d at 299. Given the inconsistencies in Wu's statements to the government and his ultimate recantation, we cannot say that the district court's decision that Wu was ineligible for the safety valve reduction was clearly erroneous.

*   *   *

We AFFIRM Wu's conviction and sentence.