**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 24, 2012
Decided April 30, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-2019

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 08 CR 982-1 |
| ARAN A. CARRILLO, *Defendant-Appellant.* | Ruben Castillo, *Judge*. |

**O R D E R**

Aran Carrillo pleaded guilty to conspiring to possess with intent to distribute heroin, 21 U.S.C. §§ 846, 841(a)(1). The district court sentenced him to 120 months' imprisonment, the statutory minimum given that the conspiracy involved 15 kilograms, *see id.* § 841(b)(1)(A)(I). On appeal Carrillo challenges the district court's decision not to apply the "safety valve," which would have allowed a sentence below the mandatory minimum, *see* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). His sole argument is that the district court committed clear error by finding that he failed to show that he truthfully provided all relevant information to the government. Because the district court committed no such error, we affirm the judgment.

During the plea colloquy, Carrillo admitted that, at the behest of a coconspirator, he delivered 15 kilograms of heroin to an undercover DEA agent. Carrillo transported the heroin to a parking lot, where he handed it to the agent in a duffle bag. Two weeks later he returned to the parking lot, where the undercover agent handed him a bag containing what Carrillo believed was $820,000 to pay for the heroin. He was arrested after departing the parking lot.

Carrillo twice debriefed with investigators in hopes of qualifying for the safety valve. In the initial session, he maintained that the 15-kilogram delivery was his first ever. He explained that a stranger, "Jesus Gonzalez," had approached him in a Chicago bar and asked him to deliver the heroin and later return to the same location to accept payment. In the second session—almost a year later—Carrillo still insisted that the 15-kilogram delivery was his first, though he now admitted that his uncle, not the fictional "Jesus Gonzalez," had asked him to make the delivery. When DEA agents confronted Carrillo with detailed drug ledgers seized from his apartment, he admitted that the ledgers were his (and in his handwriting) but asserted that the information recorded in those ledgers had been conveyed by his uncle. Carrillo previously had said that this uncle lived with him in Chicago, but now he asserted that his uncle had returned to Mexico before the 15-kilogram delivery and was phoning information for Carrillo to record in the ledgers. Carrillo denied participating in any of the many heroin deliveries memorialized in the ledgers.

At sentencing the government opposed Carrillo's request for the safety valve and maintained that he had not been truthful about his role in the drug conspiracy. Defense counsel replied that Carrillo had been truthful and continued to insist that he had never before delivered drugs until giving the 15 kilograms to the undercover agent. But Carrillo did not testify, and counsel offered no other evidence to back up this representation.

The district court declined to apply the safety valve. The court did not believe that Carrillo had "fessed up totally" about his role in the conspiracy. The court found it implausible that a sophisticated international drug conspiracy (the government was investigating the Sinaloa cartel, which is based in Carrillo's hometown of Culiacán, Mexico) would entrust heroin worth $800,000 to someone making a "rookie mission." The court adopted the proposed findings in the presentence report and set Carrillo's base offense level at 36, *see* U.S.S.G. § 2D1.1(c)(2), and subtracted 3 levels for acceptance of responsibility, *see id.* §§ 2D1.1(c)(3), 3E1.1(a). His total offense level of 33 and criminal-history category of I yielded a guidelines imprisonment range of 135 to 168 months, but the court sentenced him to just 120 months, the statutory minimum.

The safety valve allows a district court to sentence a defendant below a statutory minimum if five elements are met. Only the fifth is at issue here: whether the defendant "truthfully provided to the Government all information and evidence the defendant has

concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5); *see* U.S.S.G. § 5C1.2(a)(5).

Carrillo contends that the district court erred by considering the implausibility of his account when deciding that he had not truthfully provided the government all information and evidence.

We review a refusal to apply the safety valve for clear error, *United States v. Li Xin Wu*, 668 F.3d 882, 888 (7th Cir. 2011), and the implausibility of Carrillo's account was appropriately considered when determining his eligibility for safety-valve relief. *See United States v. Olivas-Ramirez*, 487 F.3d 512, 516 (7th Cir. 2007); *United States v. Blake*, 116 F.3d 1202, 1204 (7th Cir. 1997). Indeed, we have characterized as frivolous the same argument made by another member of the same drug cartel who delivered 20 kilograms of heroin to an undercover agent. *See United States v. Baez-Leyva*, 380 F. App'x 555, 556 (7th Cir. 2010). Carrillo bore the burden of proving by a preponderance of the evidence that he had truthfully provided the government all information. *See United States v. Nunez*, 627 F.3d 274, 280 (7th Cir. 2010); *United States v. Ramirez*, 94 F.3d 1095, 1101 (7th Cir. 1996). Because the government challenged the completeness and truthfulness of the account given during his debriefings, Carrillo was required to persuade the district court otherwise. *See United States v. Montes*, 381 F.3d 631, 637 (7th Cir. 2004); *United States v. Martinez*, 301 F.3d 860, 866 (7th Cir. 2002). Instead Carrillo chose to stand on his lawyer's representation—which carried no evidentiary weight, *see United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008), *United States v. Swanson*, 483 F.3d 509, 513 (7th Cir. 2007)—rather than testifying at sentencing or otherwise presenting evidence to show that his account was truthful. The court, therefore, correctly considered the implausibility of Carrillo's account as an indication of his lack of candor when denying him safety-valve relief. *See Olivas-Ramirez*, 487 F.3d at 517; *United States v. Ponce*, 358 F.3d 466, 468 (7th Cir. 2004).

Accordingly, we AFFIRM the judgment.