# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31043

United States Court of Appeals
Fifth Circuit

**FILED**

November 14, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

  Plaintiff - Appellee

v.

LARRY W. KELLY, JR., also known as Larry Kelly, also known as Larry W. Kelly, also known as Larry Kelly, Jr.,

  Defendant - Appellant

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

Before SMITH, OWEN, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Larry W. Kelly, Jr., appeals his conviction. He contends that the district court erroneously denied his motion for a mistrial and motion for a new trial, which alleged that the district court violated Federal Rule of Criminal Procedure 24(c) by failing to excuse an alternate juror at the end of trial and permitting her to be in the jury room during part of the regular jury's deliberations. Because the district court did not abuse its discretion, we affirm.

I.

After a two-day jury trial, Larry Kelly was found guilty of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

No. 16-31043

At the conclusion of closing statements and jury instructions, at approximately 2:48 p.m., the district court asked all members of the jury "to return to the jury room" and instructed the jury "to not begin your deliberations or even discussions on the case until you receive all the evidence and the verdict form." The district court neglected to dismiss the alternate juror, and neither party objected when she was allowed to return to the jury room with the twelve other jurors. At approximately 2:55 p.m., the trial evidence was delivered to the jury so it could begin deliberating.

The jury deliberated for approximately thirty minutes before the court discovered that it had failed to dismiss the alternate juror. At 3:29 p.m., having realized its oversight, the district court ordered the courtroom security officer to remove the alternate from the jury room and to tell the remaining jurors to discontinue deliberations. The alternate returned to the courtroom, where the district court explained the oversight and dismissed her. The district court asked the alternate not to speak with anyone about the deliberations.

The district court then called Kelly and the attorneys for both sides back into the courtroom to discuss the error. The district court notified the parties of its intention to call the remaining jurors back into the courtroom and to instruct them to begin deliberations anew, as well as to disregard any possible participation by the alternate. Kelly's attorney objected, but did not counter with an alternative course of action, and moved the court for a mistrial. The district court denied the request.

The remaining jurors returned to the courtroom, and the district court gave the following explanation and curative instruction:

> At the conclusion of our evidence portion of the trial and the instructions on the law that I gave you, I should have excused the alternate juror . . . at that time before you began your deliberations. I failed to do that.
>
> As you know, I have now excused [the alternate juror] and I now

2

must instruct you to begin your deliberations anew. I do not know to what extent [the alternate] participated in your discussions or your deliberation, but I specifically instruct you at this time that you should essentially wipe the slate clean and start anew with respect to your evaluation of the evidence in your discussion about the evidence.

It is important that you do that at this point without, again, the input or involvement of anyone who is not a regular member of the jury.

I apologize for that mistake. I hope it hasn't turned out to be time consuming error on my part, but I certainly hope that you all appreciate the importance of beginning fresh, and hopefully you all will have no problem doing so.

Approximately 90 minutes later, the jury returned a unanimous guilty verdict. Before calling the jury into the courtroom to deliver the verdict, the court explained to the parties that it planned to call each juror forward individually to "question them regarding the extent to which, if any, [the alternate juror's] presence in the jury room in any way affected their deliberations once they began their deliberations anew." The court explained that it wanted "to satisfy [itself and the parties] . . . that [the jurors] were not influenced by the presence of the alternate juror during the deliberations that resulted in the verdict." The court gave each side an opportunity to propose more specific questions to ask the jurors. Neither side offered specific questions, but the defense requested the opportunity "to suggest additional questions on an individual basis," which the court allowed.

After the jury's verdict was announced, the district court proceeded to call the jurors to the bench individually and—out of earshot of the others— question each about the effect of the alternate's presence on their deliberations. The court said the following (or something nearly identical) to each juror:

Now you understand that I excused . . . the alternate in this case. And I instructed you all to begin your deliberations anew after her departure, and I instructed you all to not consider any discussions or participations

she may have offered during the course of her presence in the jury room. Were you able to abide by that rule?

Each juror answered, "Yes." The court also asked each juror something to the effect of: "And did you reach this verdict solely on the basis of the deliberations among the twelve of you?" Each juror answered "yes" to this question as well.

The defense interjected only once, asking the jury's foreman whether the jury took a vote before the alternate was excused. The foreman explained that no vote was taken while the alternate was still in the room. Although most jurors simply answered "yes" to each of the court's questions, one juror volunteered that the jury was able to disregard any comments or influence by the alternate, "[b]ecause I don't think [the alternate] stated anything anyway." After questioning each of the twelve jurors, the court thanked and excused them.

Following the verdict, Kelly moved the court for a new trial, arguing that under Federal Rule of Criminal Procedure 24(c), "the Court [had] an obligation to prevent the alternate juror from discussing the case [with] any person," and pointing out that "the alternate juror actually engaged in preliminary deliberations with the panel" in violation of Rule 24(c). Kelly argued that "[i]n a situation where the alternate juror certainly participated in deliberations, it is impossible to retroactively cure the damage. Once the regular jury panel has heard the opinion of the alternate with regards to the guilt of the defendant, it cannot be unheard." The district court denied Kelly's motion, concluding that a Rule 24(c) violation does not require a mistrial or new trial unless the error prejudices the defendant. In finding that Kelly suffered no prejudice the court emphasized that: 1) the court gave a curative instruction, 2) the jurors unequivocally stated that the verdict was not influenced by the alternate, 3) the alternate was only briefly in the jury room, and 4) the evidence overwhelmingly supported Kelly's guilt.

4

No. 16-31043

After denying a new trial, the district court sentenced Kelly to 262 months in prison and a three-year term of supervised release. Kelly now appeals, arguing that the district court abused its discretion by denying his motions for a mistrial and a new trial.

II.

We review a district court's denial of motions for a mistrial and for a new trial for abuse of discretion. *See United States v. Pratt*, 807 F.3d 641, 645 (5th Cir. 2015) (new trial); *United States v. Ebron*, 683 F.3d 105, 128 (5th Cir. 2012) (mistrial).

III.

A.

As an initial matter, we agree that the alternate's presence during deliberations violated Rule 24(c). That rule permits district courts to "impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." Fed. R. Crim. P. 24(c)(1). A district court may retain these alternate jurors after the jury retires to deliberate, but the court must "ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged." Fed. R. Crim. P. 24(c)(3). Further, "[i]f an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." *Id.*

A previous version of Rule 24(c), in place until 1999, required district courts to dismiss any alternate jurors following trial, prohibiting their retention during deliberations. Under the old rule, courts held that "[t]he presence of alternate jurors during jury deliberations is no doubt a deviation from Rule 24(c)." *United States v. Olano*, 507 U.S. 725, 737 (1993); *see also United States v. Ottersburg*, 76 F.3d 137, 139 (7th Cir. 1996) ("[T]he failure to dismiss the two alternate jurors was a clear violation of . . . Rule 24(c)."); *United*

5

*States v. Allison*, 481 F.2d 468, 470–71 (5th Cir. 1973). The 1999 amendment recognized the impracticality of requiring immediate dismissal of alternates following a trial, noting that "there may be cases where it is better to retain the alternates when the jury retires, insulate them from the deliberation process[,] [a]nd have them available should one or more vacancies occur in the jury." Fed. R. Crim. P. 24, advisory committee's note to 1999 amendment. As a result, Rule 24(c), in its current form, permits retaining alternates throughout deliberations.

Because it prohibits only *discussion*, the text of the modern rule could arguably permit an alternate's *presence* in the jury room, so long as the alternate did not participate in the deliberations. But other circuits have uniformly continued to apply the earlier understanding of the rule, citing pre-amendment caselaw to describe the rule's scope and continuing to note that the presence of alternates during deliberations is prohibited. *See, e.g., United States v. Myers*, 280 F.3d 407, 412 (4th Cir. 2002) ("There is no doubt that the presence of alternate jurors during jury deliberations is a deviation from Rule 24(c)."); *United States v. Aguilar*, 743 F.3d 1144, 1148 (8th Cir. 2014) ("The parties—and the district court—agree that the alternate's presence during jury deliberations violated Federal Rule of Criminal Procedure 24(c)(3)."); *United States v. Li Xin Wu*, 668 F.3d 882, 887 (7th Cir. 2011) (noting it would be a Rule 24(c) violation if "alternate jurors were in fact present with the jury when deliberations began"); *United States v. Yousef*, 357 F. App'x 147, 148 (9th Cir. 2009) (holding that two alternates' presence during deliberations is a curable violation of Rule 24(c)).

This understanding is consistent with the Advisory Committee notes to the 1999 amendment. The Committee explained that "there may be cases where it is better to retain the alternates when the jury retires, *insulate them from the deliberation process*[,] [a]nd have them available should one or more

No. 16-31043

vacancies occur in the jury." Fed. R. Crim. P. 24, advisory committee's note to 1999 amendment (emphasis added). The Committee stressed:

> [T]o protect the sanctity of the deliberative process, *the rule requires the court to take appropriate steps to insulate the alternate jurors*. That may be done, for example, by separating the alternates from the deliberating jurors and instructing the alternate jurors not to discuss the case with any other person until they replace a regular juror.

*Id.* (emphasis added). As supporting authority for these warnings, the Committee cited pre-amendment caselaw holding that a district court violates Rule 24(c) by permitting alternates to sit in on deliberations. *See id.* (citing *Olano*, 507 U.S. 725; *United States v. Houlihan*, 92 F.3d 1271, 1286–88 (1st Cir. 1996)). In short, there is no indication that the 1999 Amendment changed the longstanding rule that alternates may not be present during deliberations. Sending the alternate into the jury room was therefore unintended error, as quickly recognized by the district court.

## B.

Though the alternate should not have been present in the jury room, the error does not necessarily undermine the verdict. An alternate's mere presence during deliberations is not the sort of inherently prejudicial error that requires *per se* reversal. *Olano*, 507 U.S. at 737 ("[T]he presence of alternate jurors during jury deliberations is not the kind of error that 'affect[s] substantial rights' independent of its prejudicial impact." (quoting Fed. R. Crim. P. 52(b)); *see also United States v. Houlihan*, 92 F.3d 1271, 1286 (1st Cir. 1996) ("*Olano* teaches that a violation of Rule 24(c) is not reversible error per se[.]"); *United States v. Huntress*, 956 F.2d 1309, 1314 n.3 (5th Cir. 1992) (noting that, under pre-*Olano* Fifth Circuit precedent, "a violation of Rule 24(c) would not require reversal unless there was a reasonable possibility that the violation had an effect on the verdict"). Rather, "[a] mistrial . . . is only warranted if there is a reasonable possibility that the district court's violation of Rule 24(c) *actually*

7

prejudiced [the defendant] by affecting the jury's *final verdict.*" *United States v. Acevedo*, 141 F.3d 1421, 1424 (11th Cir. 1998) (citing *United States v. Allison*, 487 F.2d 339 (5th Cir. 1973)). In denying Kelly's motions for mistrial and a new trial, the district court concluded that the temporary presence of the alternate did not impact the jury's verdict and that the curative instruction sufficiently dispelled any risk of prejudice. This ruling was not an abuse of discretion.

The record supports this conclusion. The district judge's curative instruction was thorough and clear. Other circuits have found curative instructions adequate to ameliorate prejudice caused by similar oversights. In *Acevedo*, the district court forgot to dismiss alternate jurors when the jury retired to deliberate, and, as a result, the alternates actively participated in deliberations for an hour. 141 F.3d at 1422–23. The jury, including the two alternates, elected one of the alternates the foreperson and came to a guilty verdict before the error was discovered. *Id.* Nonetheless, the Eleventh Circuit held that "[i]n light of the district court's clean slate instruction, . . . there [wa]s no reasonable possibility that the participation of the alternates in the jury's initial deliberations prejudiced Acevedo at trial, and that the court's oversight of Rule 24(c) [wa]s therefore harmless error." *Id.* at 1427. *Acevedo* provides further persuasive support for affirming the district court's ruling here.

Finally, we note that, absent any indication that the alternate juror participated in deliberations, the potential prejudice here is similar to when a juror must be replaced by an alternate. As noted, Rule 24(c)(3) contemplates such a substitution, and instructs district courts to "instruct the jury to begin its deliberations anew." There is no reason why the district court's analogous instruction and individualized polling of the jury would not suffice here. Accordingly, the district court did not abuse its discretion in denying Kelly's motions for mistrial and a new trial.

No. 16-31043

IV.

The judgment of conviction and sentence is AFFIRMED.